**Kiumars FARBAKHSH, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–1176.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1993.

Decided April 4, 1994.

---

Carol Merlin, Minneapolis, MN, argued, for appellant.

David V. Bernal, Washington, DC, argued, for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Kiumars Farbakhsh seeks review of an order of the Board of Immigration Appeals denying his application for asylum pursuant to § 208 of the Immigration and Nationality Act (hereinafter INA or the Act), 8 U.S.C. § 1158 (1988).[1] *Matter of Farbakhsh*, No. A28–384–574, 1989 WL 331872 (BIA Nov. 18, 1992). For reversal, petitioner argues the Board abused its discretion in failing to apply the proper standard of law in determining whether he had firmly resettled in Spain prior to seeking asylum in the United States and in requiring him to demonstrate compelling equities in favor of asylum. For the reasons discussed below, we deny the petition for review.

Petitioner is a native and citizen of Iran. He unlawfully entered the United States from Canada in March 1987. He was arrested and deportation proceedings were begun. At the deportation hearing petitioner filed an application for asylum and for withholding of deportation on the grounds that he would be persecuted because of his political activities if he returned to Iran. During the mid–1970s, while a university student, petitioner joined a student organization that was critical of the government. The student organization published a political newspaper, organized demonstrations, and distributed leaflets critical of the government. Petitioner graduated from the university in 1979 and enlisted in the army. He served in the army until 1981 and while he was in the army he actively supported the student organization.

In 1980 petitioner was arrested for posting a notice critical of the government. He was beaten up while in detention and was eventually released only after his family sought the assistance of a local mullah. Petitioner continued to participate in political activities critical of the government. He was arrested several times. In May 1982 he and several friends were arrested and detained for several days; petitioner was severely beaten and terrorized with a "mock" execution staged by revolutionary guards. Once again petitioner's family arranged his release through a local mullah.

After his release, petitioner went into hiding. He feared that he would be arrested and killed by government officials. In Sep-

1. The Immigration and Nationality Act was amended by the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978; however, the 1990 Act is not retroactive and does not apply to petitioner because he received his notice of deportation proceedings before March 1, 1991.

tember 1982 petitioner escaped to Turkey with the help of Kurdish smugglers. After his escape, his parents' home was searched and his younger brother was arrested and questioned. Petitioner stayed in Turkey for about four weeks. He then went to Italy and stayed there for several days. He then went to Spain because Spain did not require a visa for Iranian nationals. In Spain he contacted the United Nations High Commissioner for Refugees and was referred by that office to Spanish authorities. Petitioner then left Spain for Portugal and stayed in Portugal for several months. In 1983, petitioner returned to Spain and, with the assistance of an attorney, he filed an application for refugee status in Spain. Petitioner did not have official permission to work or study in Spain and received financial support from his parents. At that time petitioner's younger brother had also escaped from Iran and had applied for refugee status in Spain, and petitioner's younger sister was attending medical school in Spain.

Petitioner lived in Spain for almost four years. In 1987 he decided to leave Spain and join his older sister who was living in the United States. Petitioner did not believe that he would be able to find a job in Spain once he was granted refugee status and he no longer wanted to depend upon his family for financial support. Petitioner obtained a false British passport and entered Canada in February 1987, where he turned in the false passport. Canada granted him temporary resident status and one year to apply for asylum. About a month later, in March 1987, petitioner unlawfully entered the United States. At that time his older sister and her husband were students living in the United States and his parents were visiting them.

In October 1987 the immigration judge found that petitioner failed to show that it was more likely than not that he would be persecuted in Iran and denied his application for withholding of deportation. The immigration judge granted petitioner's alternate application for voluntary departure. The immigration judge also denied petitioner's application for asylum because petitioner had "firmly resettled" in Spain and was no longer fleeing persecution when he entered the United States and because he wanted to come to the United States for economic reasons.

Petitioner appealed the decision of the immigration judge to the Board. In November 1992 the Board reversed in part and affirmed in part. The Board held that petitioner had established a "clear probability" of persecution to warrant withholding of deportation and reversed that part of the decision of the immigration judge. The Board further held, however, that the immigration judge had not abused his discretion in denying the application for asylum because petitioner had "firmly resettled" in Spain and had not been in danger of being returned to Iran while he was in Spain. The Board noted that a finding of "firm resettlement" in a third country does not make an alien ineligible for asylum, but that it is one factor to be considered in determining whether to grant asylum. The Board concluded that petitioner had failed to show any compelling equities in favor of asylum. The Board noted that petitioner had passed through three countries without applying for asylum before arriving in the United States, his younger brother and younger sister lived in Spain, and petitioner had economic reasons for coming to the United States. The Board also noted that, although petitioner had stated that one of the reasons he wanted to come to the United States was to be reunited with members of his family, the family members living in the United States were not lawful permanent residents. This appeal followed.

For reversal, petitioner argues the Board abused its discretion in denying his application for asylum. He argues the Board failed to apply the proper standard of law in determining whether he had firmly resettled in Spain prior to seeking asylum in the United States and in requiring him to demonstrate compelling equities in favor of asylum. He specifically argues that the fact that he lived in Spain for several years is not sufficient to establish his "firm resettlement" there because his application for refugee status was pending and he had not been granted permission to work or attend school in Spain.

We have jurisdiction over the petition for review pursuant to § 106 of the Act, 8 U.S.C.A. § 1105a (West Supp.1993).

■ In order to establish eligibility for asylum under § 208 of the Act, 8 U.S.C. § 1158, petitioner had to demonstrate that he was a "refugee" as defined in § 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A), that is, that he was unwilling or unable to return to his country because of persecution or a well-founded fear of persecution on account of political opinion. In the present case, the Board determined that petitioner had demonstrated a "clear probability of persecution" in order to warrant withholding of deportation. The "clear probability of persecution" standard for withholding of deportation is higher than the "well-founded fear of persecution" standard required for refugee status. *See, e.g., INS v. Cardoza–Fonseca,* 480 U.S. 421, 445–50, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987). Thus, petitioner established refugee status and eligibility for asylum. However, statutory eligibility for asylum does not necessarily mean that petitioner should have been granted asylum. *Id.* at 441, 107 S.Ct. at 1218. The decision to grant asylum is a matter committed to the discretion of the Attorney General. 8 U.S.C. § 1158(a).

■ The applicant has the burden of production and persuasion in any application for asylum. *E.g., Matter of Soleimani,* Interim Decision No. 3118, 1989 WL 331872, at *3 (BIA 1989). In that case the Board decided that 8 C.F.R. § 208.8(f)(1)(ii) (1988) (in effect until September 30, 1990),[2] which required district directors to deny asylum to aliens who are firmly resettled in a third

country, did not bar immigration judges or the Board in deportation proceedings from granting asylum to aliens deemed to have been firmly resettled. 1989 WL 331872, at *5. Firm resettlement is a factor to be considered in determining whether asylum should be granted as a matter of discretion. *Id.* at *4, *citing Matter of Pula,* 19 I. & N. Dec. 467, 473–74 (BIA 1987).[3] However, a finding of firm resettlement will normally preclude a grant of asylum as a matter of discretion unless the applicant can demonstrate compelling, countervailing equities in favor of asylum. *Matter of Soleimani,* 1989 WL 331872, at *6.

■ An alien will not be found to be firmly resettled in a third country

if it is shown that his [or her] physical presence in the United States is a consequence of his [or her] flight in search of refuge, and that his [or her] physical presence is reasonably proximate to the flight and not one following a flight remote in point of time or interrupted by an intervening residence in a third country reasonably constituting a termination of the original flight in search of refuge. The question of resettlement is not always limited solely to the inquiry of how much time has elapsed between the alien's flight and the asylum application. Other factors germane to the question of whether the alien is firmly resettled include family ties, intent, business or property connections, and other matters.

*Id.* at *7 (citations omitted). At issue in the present case is whether petitioner's interven-

---

**2.** The current regulations require a mandatory denial of asylum to aliens who are firmly resettled. 8 C.F.R. § 202.14 (1993) (effective Oct. 1, 1990). The Board found that the current regulations did not apply to petitioner's application for asylum which was filed before October 1, 1990. Administrative record at 8 n. 5.

**3.** Factors to be considered in determining whether to grant asylum include whether the alien passed through any other countries or arrived in the United States directly; whether orderly refugee procedures were in fact available to help the alien in any country he or she passed through; whether the alien made any attempts to seek asylum before coming to the United States; the length of time the alien remained in the third

country; the living conditions, safety and potential for long-term residency in the third country; relatives legally living in or other personal ties to the United States; ties to any other countries where alien does not fear persecution; whether the alien engaged in fraud to circumvent orderly refugee procedures and the seriousness of the fraud (for example, fleeing with fraudulent documents is not considered as serious as entering the United States under the assumed identity of a United States citizen with a United States passport, especially if the passport was fraudulently obtained from the United States); and, finally, general humanitarian considerations such as the alien's age and health. *Matter of Pula,* 19 I. & N. Dec. 467, 473–74 (BIA 1987).

ing residence in Spain reasonably constituted a termination of his original flight from Iran in search of refuge. "An alien is deemed to be 'firmly resettled' if he [or she] has been offered permanent resettlement by another country as a consequence of his [or her] flight from persecution, unless it is established that the conditions of his [or her] residence in that country have been substantially and consciously restricted by the authorities of that country." *Id.* at *6, *citing* 8 C.F.R. § 208.14 (1988) (effective until Sept. 30, 1990). Petitioner argues the conditions of his residence in Spain were too restricted to be consistent with firm resettlement. Petitioner notes that his application for refugee status had been pending for more than three years and, because he had not been granted official permission to work or attend school or government benefits, he had had to depend upon his family for financial support.

■ We hold the record supports the Board's finding that petitioner had firmly resettled in Spain. Petitioner had lived more than four years in Spain without fear of being returned to Iran; he initially intended to remain in Spain because he filed an application for refugee status there; his application for refugee status was pending; his younger brother and younger sister were living in Spain. Moreover, petitioner's travels do not suggest that his arrival in the United States in 1987 was reasonably proximate to his flight from persecution in Iran in 1982. In other words, petitioner's stay in Spain was not a stopover en route to refuge in the United States. *Compare Matter of Soleimani*, 1989 WL 331872, at *7 (10–month stay in Israel not considered firm resettlement; alien, who had been ill and had been hospitalized, stayed with her grandmother while recuperating and studied Hebrew).

■ We also hold that the Board did not abuse its discretion in denying petitioner's application for asylum. Petitioner passed through several countries (Turkey, Italy, Spain, Portugal, Canada) en route to the United States; in Spain and Canada orderly refugee procedures were in fact available to him. He had applied for refugee status in Spain, and Canada had granted him temporary resident status and one year to apply for asylum. Although petitioner did not have official permission to work or study while he was living in Spain, he was financially supported by his family. He also had personal ties to Spain because his younger brother and younger sister were living in Spain. In addition, petitioner circumvented orderly refugee procedures by using a forged British passport and by entering the United States without inspection. Finally, petitioner failed to demonstrate any compelling, countervailing equities in favor of asylum. He is in good health and neither very young or elderly, and his stated reason for coming to the United States was economic.

We note that the Board found that petitioner had proven a "clear probability of persecution" in Iran. In this regard, the Board reversed the immigration judge and ordered that petitioner not be deported to Iran. In affirming the Board, we uphold the Board's order that in accordance with § 243(h) of the Act, that petitioner shall not be deported to Iran. We further approve the Board's order that petitioner be allowed to depart from the United States voluntarily within thirty days from the date of our mandate or any other extension beyond that time as may be granted by the district director. In the event that petitioner does not voluntarily depart, we then hold that petitioner shall be deported in accordance with the provisions of § 243(a) of the Act. On this basis, the petition for review is denied and the decision of the Board is affirmed.