48 F.3d 1215
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Berihun ASSFAW, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 94-1578.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 30, 1995.
Decided March 10, 1995.
 
 ARGUED: Antoinette Josepha Rizzi, LAW OFFICES OF ANTOINETTE J. RIZZI, Arlington, VA, for Petitioner. Joan Estelle Smiley, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, DC, for Respondent. ON BRIEF: Frank W. Hunger, Assistant Attorney General, Michael P. Lindemann, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for respondent.
 Before MURNAGHAN and MICHAEL, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Berihun Assfaw seeks review of a Board of Immigration Appeals (BIA) order denying his motion to reopen and remand his case for consideration of his application for suspension of deportation pursuant to 8 U.S.C. Sec. 1254(a)(1). Specifically, he says the BIA abused its discretion in finding he did not establish that his deportation would result in "extreme hardship." Finding no error, we affirm.
 
 I.
 A.
 
 2
 Berihun Assfaw is a fifty-one-year-old unmarried citizen and native of Ethiopia. According to Assfaw, in 1976 he fled from Ethiopia and ended up in Bonn, West Germany. West Germany granted him refugee status. He lived and worked there for about ten years. He received a housing subsidy from the West German government. He had good medical care, which apparently was free to all citizens and refugees in West Germany. He was free to practice his religion, and the West Germans helped him establish a church for his Ethiopian colleagues there. He owned a car. He had a bank account with the equivalent of around $5,000 in it. He attended school and traveled extensively throughout Europe and Africa.
 
 
 3
 After about ten years in West Germany, Assfaw decided he wanted to live permanently in the United States. He says that decision was motivated in large part by health concerns, specifically, lower back pain with associated muscle spasms. Bonn's cold climate aggravated this condition, and Assfaw thought the United States climate would make him feel better. However, when he requested a visa to come here, he mentioned neither his health problem nor his intention to become a permanent United States resident. Rather, he applied for a nonimmigrant visitor visa and told the consular officers that he simply wanted to visit two of his brothers. (At the time, those brothers were lawful United States residents. They now are United States citizens.)
 
 
 4
 Assfaw got a visa and was admitted to the United States on June 4, 1986, as a visitor for pleasure for six months. He initially lived in Arizona. In March 1987 he moved to Washington, D.C., and has since remained in the D.C. area. He has earned a living as a taxi cab driver and author on Ethiopian history and politics, and he receives some financial support from his brothers.
 
 B.
 
 5
 To repeat, on June 4, 1986, Assfaw was admitted here as a visitor for pleasure. He was authorized to stay only through December 4, 1986. However, he failed to leave by that date. Instead, he filed an application for asylum, alleging that he had a well-founded fear of persecution in Ethiopia because of his political views. His application was denied on June 23, 1989, and he was ordered to depart voluntarily by July 23, 1989. Once again, he failed to leave. Consequently, in an August 2, 1989, Order to Show Cause, Assfaw was charged with deportability for remaining here longer than authorized. A hearing was held, and he conceded deportability. The day before the hearing, he filed another asylum application.
 
 
 6
 On January 22, 1990, an immigration judge held a hearing on the merits of Assfaw's application for asylum and withholding of deportation. (An application for asylum made during deportation proceedings is treated as a request for both asylum and withholding of deportation. 8 C.F.R. Sec. 208.3(b).) The immigration judge, exercising his discretion, denied the application on the ground that Assfaw had been "firmly resettled" in West Germany prior to his visit to the United States and had not demonstrated countervailing equities that would justify asylum or withholding of deportation. (8 C.F.R. Sec. 208.14(c)(2), effective October 1, 1990, now requires the denial of asylum relief to any alien who had firmly resettled in a third country prior to entering the United States. It is no longer a discretionary matter. See Farbakhsh v. INS, 20 F.3d 877, 881 (8th Cir.1994).)
 
 
 7
 Assfaw appealed, and the BIA affirmed in an order dated December 19, 1991. The BIA gave him thirty days to depart voluntarily. Once again, Assfaw failed to leave. On May 19, 1992, he filed a motion to reopen the deportation proceedings for reconsideration based on "new evidence." His motion alleged he could no longer be considered firmly resettled in West Germany (now the Federal Republic of Germany) for two reasons. First, he said the highly publicized acts of persecution toward foreigners and asylum-seekers by neo-Nazis there suggested that Germany is no longer a safe haven for him. Second, he alleged he could not get the travel documents he needed to go back to Germany.
 
 
 8
 While his motion to reopen was pending before the BIA, Assfaw became eligible to apply for suspension of deportation because he had been living in the United States continuously for seven years as of June 4, 1993. So, he filled out an application for suspension of deportation and filed with the BIA a motion to reopen and remand for consideration of his application.
 
 
 9
 In an order dated February 10, 1994, the BIA denied both the motion to reopen for reconsideration on asylum and withholding of deportation and the motion to reopen and remand for consideration of his application for suspension of deportation. As for the latter motion, the BIA found that Assfaw failed to establish that his deportation would result in "extreme hardship," making him ineligible for suspension of deportation.
 
 
 10
 Assfaw then filed this appeal. He challenges only the BIA's denial of his motion to reopen and remand for consideration of his application for suspension of deportation. He has not appealed the BIA's denial of his motion to reopen for reconsideration on asylum and withholding of deportation, i.e., the issue of firm resettlement.
 
 II.
 
 11
 The Attorney General has the discretion to suspend deportation and adjust an alien's status to that of an alien lawfully admitted for perma nent residence. 8 U.S.C. Sec. 1254(a). Under 8 U.S.C. Sec. 1254(a)(1), an alien is not eligible for suspension of deportation unless he can establish that he "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence[.]" Extreme hardship may be interpreted narrowly because of the "exceptional nature of the suspension remedy." INS v. Jong Ha Wang, 450 U.S. 139, 145 (1981) (per curiam).
 
 
 12
 Assfaw contends the BIA abused its discretion in failing to consider three types of evidence relating to extreme hardship. First, he says the BIA failed to consider his extensive family in the United States. Second, he says the BIA failed to consider that the cold German climate will aggravate his back problem. Third, he says he might be persecuted in Germany as a foreigner and asylum-seeker, and he claims he cannot return to his native Ethiopia as an alternative because he will be persecuted there for his political views.
 
 
 13
 As for the hardship he might suffer upon being separated from his family members in the United States, the BIA clearly addressed it. The BIA noted that Assfaw has two brothers and many other relatives living in the United States. The BIA observed, however, that Assfaw is unmarried and has no children living here; his only child lives in Ethiopia. His parents are deceased, and his several other siblings live outside the United States.
 
 
 14
 The BIA did not abuse its discretion. "General allegations of emotional hardship caused by severing family ... ties are a common result of deportation." Marques-Medina v. INS, 765 F.2d 673, 677 (7th Cir.1985). "When the potential hardships the alien may encounter are the same faced by any alien to be deported, the 'extreme hardship' standard has not been met." Cortes-Castillo v. INS, 997 F.2d 1199, 1204 (7th Cir.1993). "[T]he cases are consistent in finding [extreme hardship] lacking where the deportation would result in nothing more than the emotional or even financial tribulations which generally follow the separation of a family." Chiaramonte v. INS, 626 F.2d 1093, 1101 (2d Cir.1980). See, e.g., Dill v. INS, 773 F.2d 25, 31 (3d Cir.1985).
 
 
 15
 As for Assfaw's back problem, the immigration judge and the BIA (in its initial decision) questioned the seriousness of that condition for two reasons. First, Assfaw did not bring it up when he applied for a visa to come here. Second, he left Arizona for Washington, D.C., where the winter climate is not substantially warmer than Bonn's. Thus, the BIA did not really mischaracterize the record by saying that Assfaw "appears to enjoy good health," and it did not abuse its discretion in concluding that his deportation would not aggravate his medical condition enough to constitute an extreme hardship.
 
 
 16
 As for the persecution Assfaw says he might face in Germany (or in Ethiopia, for that matter), "the BIA may define 'extreme hardship' narrowly, so as to give consideration to persecution claims only under applications for asylum or prohibition of deportation, and not with applications for suspension of deportation." Kashefi-Zihagh v. INS, 791 F.2d 708, 710 (9th Cir.1986); accord Gebremichael v. INS, 10 F.3d 28, 40 (1st Cir.1993); Farzad v. INS, 802 F.2d 123, 126 (5th Cir.1986).
 
 
 17
 In sum, the BIA did not abuse its discretion in concluding that Assfaw failed to establish that his deportation would result in extreme hardship, and therefore the BIA did not abuse its discretion in refusing to reopen and remand.
 
 
 18
 One final note. Assfaw let his West German travel document expire during his illegal stay here, despite his opportunity to renew it. In his brief to us he alleges he cannot get the necessary travel documents to return to Germany, and he suggests this is relevant to extreme hardship. We disagree. Moreover, we agree with the BIA that it is irrelevant to the issue of firm resettlement. See Abdalla v. INS, Nos. 93-9590, 94-9530, 1994 WL 720719, at * 3 (10th Cir. Dec. 29, 1994).
 
 III.
 
 19
 We affirm the BIA's denial of Assfaw's motion to reopen and remand.
 
 AFFIRMED