# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2649

_____

| | | |
|---|---|---|
| Ahmad Wali Sultani; Saleha Sultani; Beejan Sultani; Mariam Sultani; Ahmad Wasim Sultani, | * * * * | |
| | * | On Petition for Review of an |
| Petitioners, | * | Order of the Board of |
| | * | Immigration Appeals. |
| v. | * | |
| | * | |
| Alberto Gonzales, Attorney General, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted:  March 17, 2006
Filed:  July 27, 2006

_____

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Ahmad Wali and Saleha Sultani and their children, Beejan, Mariam, and Ahmad Wasim, challenge an order of the Board of Immigration Appeals (BIA), which summarily affirmed the decision of the Immigration Judge (IJ) denying the Sultanis' applications for asylum from Afghanistan.  We deny the petition for review.

Ahmad Wali fled Afghanistan for Pakistan in September 1981 after Soviet forces invaded Afghanistan.  In 1983, Saleha, Beejan, and Mariam joined Ahmad Wali

in Pakistan. The family remained in Pakistan until 1988, during which time Ahmad Wali worked for various international relief agencies. While in Pakistan, the Sultanis applied for refugee status in Australia, and they were granted that status in August 1988. The family moved to Melbourne, Australia, where Ahmad Wasim was born.

In September 1989, the Sultani family came to the United States as visitors with permission to remain in the country for a temporary period in order to obtain medical treatment for Beejan. The Sultanis did not leave the United States when the visitation period ended. In September 1990, Ahmad Wali and Saleha were placed in deportation proceedings. Through their counsel, Ahmad Wali and Saleha conceded deportability, but requested a one-year voluntary departure period in order to complete Beejan's medical treatment in the United States. After hearing testimony from Ahmad Wali, the IJ continued the deportation proceedings to allow the Sultanis and their attorney an opportunity to consult with Australian authorities to determine the Sultanis' immigration status in Australia. The IJ instructed the Sultanis to use the break in proceedings to decide whether they intended to apply for asylum in the United States or to proceed with their request for voluntary departure.

When the deportation proceedings resumed in January 1991, the Sultanis' attorney stated that she had spoken with Australian authorities and those authorities confirmed that the Sultanis were resettled in Australia and that they could maintain their status in Australia by properly renewing their official documents. The Sultanis declined to apply for asylum in the United States and instead reiterated their request for voluntary departure, assuring the IJ and the government that they would maintain their status in Australia during the departure period. Based on these representations, the government did not oppose voluntary departure, and the IJ granted the request. The Sultanis were permitted to voluntarily depart the United States on or before January 4, 1992, or face deportation to Australia or, in the alternative, Afghanistan. Thereafter, the Sultanis received a number of extensions of their voluntary departure date, the last one expiring on April 12, 1993, but they did not leave the United States.

The Sultanis renewed their status in Australia on several occasions—the last such renewal expiring in August 1994—but they eventually allowed their status in Australia to lapse.

On January 24, 2002, the Sultanis filed a motion to reopen the 1991 deportation proceedings, claiming that they were entitled to asylum, withholding of removal, and relief under the Convention Against Torture (CAT) based on their fear of persecution in Afghanistan.[1] The IJ denied the motion to reopen, concluding that the Sultanis were firmly resettled in Australia prior to their arrival in the United States and thus were ineligible for asylum from Afghanistan. The IJ also denied on the merits the Sultanis' applications for withholding of removal and relief under the CAT.

The Sultanis appealed to the BIA, which remanded the case to the IJ to consider whether the Sultanis had a "well-founded fear of persecution based upon the current political situation" in Afghanistan. Decision of BIA, Apr. 1, 2003. On remand, the IJ again concluded that the Sultanis had firmly resettled in Australia and thus were ineligible for asylum in the United States, notwithstanding the current conditions in Afghanistan. The IJ granted the Sultanis withholding of removal to Afghanistan and ordered the family deported or removed to Australia or to any country other than Afghanistan that would accept them. The BIA summarily affirmed the IJ's order. The Sultanis appeal, arguing that the IJ improperly concluded that they were firmly resettled in Australia, failed to follow the BIA's directive to consider their claim of persecution in light of current conditions in Afghanistan, and ignored evidence regarding conditions in Australia for Afghans.

When the BIA summarily affirms an IJ's decision, we review the IJ's decision as the final agency determination. Habtemicael v. Ashcroft, 370 F.3d 774, 779 (8th

---

[1]Beejan, Mariam, and Ahmad Wasim were placed in removal proceedings in 2003. They filed individual applications for asylum, withholding of removal, and relief under the CAT, and their cases were consolidated with their parents' case.

Cir. 2004). A finding of firm resettlement is a factual determination that we review under the deferential substantial-evidence standard. Rife v. Ashcroft, 374 F.3d 606, 611–12 (8th Cir. 2004). Under this standard, the IJ's findings must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but compels it. 8 U.S.C. § 1252(b)(4)(B) (stating that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). We review the IJ's legal conclusions de novo, giving deference where appropriate to the agency's interpretation of the law it is charged with administering. Fisher v. INS, 291 F.3d 491, 496 (8th Cir. 2002).

The Sultanis first challenge the IJ's finding that they were firmly resettled in Australia prior to entering the United States. While an alien who is unable or unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" may be granted asylum in this country, 8 U.S.C. § 1101(a)(42)(A), asylum is not available to an alien who was firmly resettled in another country before coming to the United States, 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.15. The firm-resettlement bar to asylum ensures that "asylum is not granted to aliens who have found a haven from persecution" elsewhere. Ali v. Reno, 237 F.3d 591, 595 (6th Cir. 2001).

"An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement . . . ." 8 C.F.R. § 208.15. While the question of whether a third country formally offered permanent resident status, citizenship, or some form of permanent resettlement is "an important factor and, indeed, the proper place to begin the firm resettlement analysis," in some cases direct evidence of such an offer may be difficult or impossible to procure. Rife, 374 F.3d at 611. Consequently, other factors may be considered to determine whether an alien's stay in a third country was more than

-4-

simply "a stopover en route to refuge in the United States." Farbakhsh v. INS, 20 F.3d 877, 882 (8th Cir. 1994). See also Abdille v. Ashcroft, 242 F.3d 477, 487 (3d Cir. 2001), cited with approval in Rife, 374 F.3d at 611, and recognizing that other factors may be considered if evidence of a resettlement offer is unobtainable.

Here, the IJ concluded in both its order denying the Sultanis' motion to reopen and in its decision on remand from the BIA that the Sultanis were firmly resettled in Australia prior to arriving in the United States. While residing in Pakistan, the Sultanis applied for and were granted refugee status in Australia. The Australian government issued Certificates of Identity to the Sultanis that listed their status as refugees and permitted indefinite renewal of that status. The Certificates of Identity indicated that the Sultanis enjoyed "unrestricted" employment status and were permitted to travel from Australia to the United States and back. Ahmad Wali testified at the 1991 deportation proceedings that the family was in fact resettled in Australia. During those proceedings, the Sultanis and their attorney consulted with the Australian embassy to confirm that the family would be permitted to return to Australia if they maintained their status in that country. Ahmad Wali assured the IJ and the government that his family members had renewed their status in Australia in the past and intended to maintain their status in the future. Other facts in the record also support the IJ's conclusion that the Sultanis were firmly resettled in Australia. While living in Melbourne, the family rented an apartment, Ahmad Wali obtained employment, Beejan and Mariam attended public school, Saleha gave birth to a child, the family traveled freely throughout the city, and the family received free medical care and monetary assistance from the government. See Abdille, 242 F.3d at 487 (noting factors IJ may consider other than offer of permanent resettlement to resolve issue of firm resettlement, but declining to apply those factors because record included evidence of firm resettlement offer); see also Farbakhsh, 20 F.3d at 882 (considering factors). The facts of the case constitute substantial evidence supporting the IJ's conclusion that the Sultanis were firmly resettled in Australia.

Although a finding of firm resettlement in a third country prior to arrival in the United States generally precludes a grant of asylum, the regulations provide two exceptions to the firm-resettlement bar. If an alien establishes that his stay in a third country was a "necessary consequence" of his flight from persecution, that he remained in the third country only as long as necessary to secure onward travel, and that he did not establish significant ties in the third country, asylum may be granted. 8 C.F.R. § 208.15(a). In addition, if an alien establishes that conditions of his stay in the third country were "so substantially and consciously restricted" by the government that he was not resettled, asylum may be granted. Id. § 208.15(b). In their motion to reopen, the Sultanis alleged that because they were refugees from Afghanistan, the Australian medical and educational communities were indifferent to Beejan's special needs. According to the Sultanis, this treatment so restricted their stay in Australia that they were not resettled in that country. As the IJ noted, however,

> [e]ven if this were actually the policy of the Australian authorities, [the Sultanis] have not shown that refugees with special needs were treated any differently than other Australian residents with special needs, or that Beejan was denied medical benefits normally available to other residents. . . . Moreover, the fact that Beejan received better treatment [in the United States] than in Australia does not indicate that he was denied firm resettlement there.

Memorandum and Order of Apr. 19, 2002 at 6. The IJ also rejected the Sultanis' claims that they remained in Australia only long enough to secure passage to the United States and did not establish significant ties in that country. Substantial evidence supports the IJ's conclusion that the Sultanis failed to establish that either of the exceptions to the firm-resettlement bar applied.

The Sultanis next argue that the IJ failed to follow the BIA's directive on remand. The BIA instructed the IJ to consider whether the Sultanis could establish a well-founded fear of persecution based on the current political situation in

Afghanistan. Because the IJ initially and on remand found that the Sultanis were firmly resettled in Australia, as discussed above, the Attorney General is statutorily barred from granting the Sultanis asylum in the United States based on conditions in Afghanistan. 8 U.S.C. § 1158(b)(2)(A)(vi). And because of this statutory bar, the IJ was not required to consider whether the Sultanis could establish that they qualified for asylum from Afghanistan. On account of their firm resettlement in Australia, the Sultanis could not be granted asylum from Afghanistan even if they could establish that they had suffered persecution in the past or would suffer persecution in the future in that country. Asylum from an alien's country of origin is not available if the alien was firmly resettled in a third country before entering the United States. Id.; Diallo v. Ashcroft, 381 F.3d 687, 692 (7th Cir. 2004) ("If the doctrine of firm resettlement sounds the death knell on the asylum-seeker's claim, there is simply no need to continue on to determine whether an asylum-seeker was the victim of past persecution or has a well-founded fear of future persecution.").

Furthermore, the possibility that the Sultanis may not be permitted to return to Australia because they allowed their status in that country to expire is irrelevant to the finding that they were firmly resettled in Australia. The firm-resettlement bar focuses on the Sultanis' status *prior* to their arrival in the United States. See 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.15. As the Tenth Circuit held in Abdalla v. INS, 43 F.3d 1397, 1400 (10th Cir. 1994), a finding of firm resettlement is not "affected by the possibility that by terminating his [third country] residence permit . . . [an alien] may have jeopardized his entitlement to resume residence in that country through his extended (and illegal) stay in the United States." This rule prohibits an alien from "bootstrapping an asylum claim simply by unilaterally severing his existing ties to a third country after arriving in the United States." Id.; see also Firmansjah v. Gonzales, 424 F.3d 598, 603 (7th Cir. 2005) (noting that an alien's failure to renew her resident status in Singapore did not preclude a finding that she was firmly resettled in that country prior to entering the United States); Ali, 237 F.3d at 596 (concluding that "Danish authorities' declaration that they are no longer obligated to accept [the alien]

-7-

into their country does not undermine the [BIA]'s finding of firm resettlement" in Denmark); <u>Vang v. INS</u>, 146 F.3d 1114, 1117 (9th Cir. 1998) (holding that the fact that an alien permitted his status in a third country to expire after entering the United States does not impact finding of firm resettlement); <u>Yang v. INS</u>, 79 F.3d 932, 939 (9th Cir.) (finding firm resettlement despite aliens' claims that they would no longer be able to return to country of firm resettlement due to expiration of travel documents), <u>cert. denied</u>, 519 U.S. 824 (1996). The Sultanis' argument that the Australian government might not permit them re-entry now that the family has allowed their status in that country to expire is irrelevant to the IJ's finding that the Sultanis were firmly resettled in Australia prior to their arrival in the United States.

Finally, the Sultanis argue that the IJ erred by failing to consider evidence they submitted regarding conditions for Afghans in Australia. Although the Sultanis may not be granted asylum from Afghanistan because they were firmly resettled in Australia, they may be granted relief from removal to Australia if they carry their burden of proving that they qualify for any such relief. <u>See</u> <u>Rife</u>, 374 F.3d at 612. In their motion to reopen the 1991 deportation proceedings, the Sultanis argue that the Australian government has established a policy of repatriating Afghan refugees. The Sultanis did not argue, however, that this—or any other—alleged policy of the Australian government supported relief from removal to Australia. Instead, the Sultanis submitted their evidence regarding conditions in Australia in support of their contention that their stay in that country was so substantially and consciously restricted by the government that they could not be considered firmly resettled. Not surprisingly, the IJ addressed the evidence in this context and found it unavailing. Although it is far from clear, the Sultanis now appear to be arguing that the conditions for Afghans in Australia have deteriorated to such a degree that the family should be permitted to remain in the United States rather than be removed to Australia. These arguments have yet to be addressed by the BIA. Failure to raise an issue before the agency constitutes a failure to exhaust administrative remedies and deprives this court of jurisdiction to hear the matter. <u>See</u> <u>Ateka v. Ashcroft</u>, 384 F.3d 954, 957 (8th Cir.

2004); <u>Halabi v. Ashcroft</u>, 316 F.3d 807, 808 (8th Cir. 2003) (per curiam) (declining to address arguments regarding alien's recent marriage and its effect on his immigration status because he had not exhausted his administrative remedies).  The Sultanis did not argue for relief from removal to Australia when they appeared before the IJ or when they filed their brief with the BIA.  It follows that we do not have jurisdiction to review this issue.

We conclude that substantial evidence on the record supports the IJ's determination that the Sultanis were firmly resettled in Australia and thus not entitled to asylum in the United States.  Accordingly, we deny the petition for review.

_____