# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2176

_____

Myra Modupe Goswell-Renner,

*Petitioner*,

v.

Eric H. Holder, Jr., Attorney General of United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 14, 2014
Filed: August 7, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Myra Goswell-Renner, a citizen of The Gambia, petitions for review of a decision of the Board of Immigration Appeals dismissing her appeal from an immigration judge's order that she be removed from the United States. Goswell-Renner argues that the immigration judge erred in finding that she was ineligible for cancellation of removal. She also argues that the Board erred in rejecting her claim

for withholding of removal due to her fear of persecution as the mother of daughters at risk of suffering female genital mutilation in The Gambia. We deny the petition.

I.

Goswell-Renner entered the United States on a non-immigrant student visa in 1990. Several years later, her mother filed a petition for Goswell-Renner to become a resident as an unmarried daughter over the age of twenty-one. That petition was approved in 1998. The next year, Goswell-Renner married. The marriage automatically revoked the approval of her petition, because the petition was premised on her status as an unmarried daughter.

Without revealing her marriage, Goswell-Renner applied for adjustment of status to that of lawful permanent resident. Goswell-Renner told the immigration officer who conducted her adjustment interview that she was not married and never had been married. If she had revealed her marriage, then the Department of Homeland Security would have discovered that she was ineligible for adjustment of status. Based on what they knew, however, immigration officials adjusted Goswell-Renner's status in 2004.

In July 2010, the Department initiated removal proceedings against Goswell-Renner on the ground that she had procured an immigration benefit (*i.e.*, adjustment of status) by fraud or willful misrepresentation and did not have a valid entry document. After a hearing, an immigration judge concluded that Goswell-Renner was removable because she had given false testimony in the adjustment interview for the purpose of obtaining adjustment of status. Based on Goswell-Renner's false testimony in 2004, the immigration judge also concluded that she was ineligible for cancellation of removal because she had not demonstrated good moral character under the law during the ten-year period preceding her application. The immigration judge ruled that Goswell-Renner's asylum claim was untimely.

Goswell-Renner sought withholding of removal on the ground that her United States citizen daughters were at risk of female genital mutilation if Goswell-Renner were removed to The Gambia and the daughters accompanied her. The immigration judge rejected the argument because Goswell-Renner claimed a risk of harm only to her children, not a risk that she herself would be persecuted, and the Board has ruled that an alien may not establish eligibility for withholding based solely on fear that her daughter may be harmed. *See In re A-K-*, 24 I. & N. Dec. 275 (BIA 2007). The immigration judge concluded in addition that Goswell-Renner showed only a speculative fear that some distant relative or other person would kidnap her daughters and subject them to female genital mutilation. Recounting that Goswell-Renner testified that she and her husband would return to The Gambia with their children and that they oppose the practice, the immigration judge found that Goswell-Renner failed to show a likelihood that she could not protect their daughters. The immigration judge ordered Goswell-Renner removed and granted her an opportunity to depart voluntarily.

Goswell-Renner appealed to the Board of Immigration Appeals, and the Board affirmed. Goswell-Renner challenged the decision on removal, arguing that her misrepresentations about marital status were not willful, because she did not realize that her marital status was relevant to her eligibility for adjustment of status. The Board saw no clear error in the immigration judge's determination that her claim of ignorance was not credible, "considering her education level, her fluency in English, and the lack of a persuasive explanation for consistently misrepresenting her marital status throughout the adjustment process." On cancellation of removal, the Board agreed with the immigration judge that Goswell-Renner gave false testimony under oath that she was not married and never had been married, and that she was thus precluded from establishing the good moral character required by 8 U.S.C. § 1229b(b)(1)(B).

The Board also rejected Goswell-Renner's request for withholding of removal based on the risk that her daughters would be subjected to female genital mutilation in The Gambia. The Board agreed with the immigration judge that the fear was "speculative," noting that Goswell-Renner, her sisters, and her mother were not subjected to the procedure. The Board determined that she had not shown a "realistic possibility" that her United States citizen daughters would be harmed by unidentified individuals. The Board also reasoned that Goswell-Renner's fear that *her daughters* could be persecuted if they were to accompany her to The Gambia is not a basis for *Goswell-Renner* to obtain relief, because she did "not allege that she herself risks being personally targeted for persecution based on any protected characteristic."

Goswell-Renner petitions for review, challenging the decisions on cancellation of removal and withholding of removal. Because the Board affirmed the decision of the immigration judge based on a clear-error standard of review for findings of fact, but also added reasoning of its own, we review the two decisions together. *See Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 837 (8th Cir. 2004). The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

II.

A.

To be eligible for cancellation of removal, an applicant must demonstrate good moral character for ten years preceding the date that she applied for cancellation of removal. 8 U.S.C. § 1229b(b)(1); *see Flores v. Holder*, 699 F.3d 998, 1004 (8th Cir. 2012). A person must not be regarded as one of good moral character if she "has given false testimony for the purpose of obtaining" immigration or naturalization

benefits. 8 U.S.C. § 1101(f)(6); *Kungys v. United States*, 485 U.S. 759, 779-80 (1988).

There was substantial evidence to support the immigration judge's finding that Goswell-Renner gave false testimony for the purpose of obtaining an immigration benefit. Goswell-Renner is well-educated and speaks English. The agent who conducted her adjustment interview testified that when he asked her if she was married, she replied that she had never been married. Goswell-Renner claims that she did not understand the significance of her failure to reveal her marriage, and that she did not disclose the information because she thought the marriage was over. But the immigration judge reasonably found that she was not credible. Although Goswell-Renner was separated at the time of the interview, she was not divorced or legally separated. And even a mistaken belief that the marriage was over would not explain her failure to acknowledge that she had been married in the past. The immigration judge found that Goswell-Renner lied about her marriage because she understood that her eligibility for adjustment of status depended on her status as the unmarried daughter of her mother. This was a finding that a reasonable adjudicator could reach based on the record as a whole, and we therefore deny Goswell-Renner's petition for review on the issue of cancellation of removal.

B.

Goswell-Renner argues alternatively that she is eligible for withholding of removal. To establish eligibility for withholding of removal, an alien must show a clear probability that her life or freedom would be threatened on the basis of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Guled v. Mukasey*, 515 F.3d 872, 881 (8th Cir. 2008).

An alien parent claiming fear that her child will be subjected to female genital mutilation upon return to another country might bring a claim for withholding of

removal based on two different theories. One is a "derivative" claim in which the alien parent seeks relief based on the likelihood of persecution directed at her child. This court has rejected that theory, holding that "an applicant may not establish a derivative claim for withholding of removal based upon the applicant's child's fear of persecution." *Gumaneh v. Mukasey*, 535 F.3d 785, 789 (8th Cir. 2008). The second theory is that risk that a child would be subjected to female genital mutilation against the alien parent's wishes amounts to "direct" persecution of the alien parent. *See Kone v. Holder*, 620 F.3d 760, 765 (7th Cir. 2010). This court has identified that theory but not addressed whether or in what circumstances it would be sufficient to justify withholding of removal. *See Hounmenou v. Holder*, 691 F.3d 967, 971-72 (8th Cir. 2012).

In her petition for review, Goswell-Renner raises a claim of direct persecution, arguing that she herself is likely to be persecuted based on her membership in the particular social group of "mothers of daughters forcibly repatriated to countries where FGM [female genital mutilation] is practiced." To prevail on this claim, Goswell-Renner must show that it was properly presented and exhausted in the administrative proceedings, *see Sultani v. Gonzales*, 455 F.3d 878, 885 (8th Cir. 2006), and that no reasonable adjudicator could agree with the immigration judge and the Board that there is insufficient risk that Goswell-Renner's daughters would be subjected to female genital mutilation if they accompany her to The Gambia. *Elias-Zacarias*, 502 U.S. at 483-84. An alien seeking withholding of removal must show it is more likely than not that she would be persecuted upon removal. 8 C.F.R. § 1208.16(b)(2).

On careful review of the administrative record, we conclude that Goswell-Renner did not present a claim of direct persecution to the Board. In her brief to the Board, the title of her argument on withholding of removal referred to "Parent's claim to derivative asylum based on likelihood of children's claim of fear of future persecution via FGM." A.R. 43. She acknowledged that this court in *Gumaneh*

rejected a "derivative" claim for withholding of removal, but argued that the law was not well-settled and asserted that there was controversy "with the Board itself" on "whether a parent has any derivative claim." *Id.* She concluded by arguing that "[a]lthough the 8th [C]ircuit may have settled law" on the question, the Board should "reconsider the issue of harm to family members not at risk of the procedure itself and consider the derivative harm associated with the [e]ffects upon those . . . witnessing harm to one's children." *Id.* at 45.

In light of this brief, it is not surprising that the Board treated Goswell-Renner's appeal as a derivative claim for withholding of removal and rejected it on that basis. Goswell-Renner did not properly raise before the Board a claim of direct persecution against her as a parent of children who might be subjected to harm in The Gambia. To preserve a claim for review in the court of appeals, however, an alien must properly exhaust administrative remedies before the agency. *Sultani*, 455 F.3d at 884. Because Goswell-Renner failed to do so, we lack jurisdiction to consider a claim of direct persecution for the first time on a petition for review. *Id.* The Board did not violate Goswell-Renner's due process rights by construing her appeal to raise only a derivative claim for withholding of removal, as that reading was the most straightforward construction of her brief.

\* \* \*

The petition for review is denied.

_____