# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1623

_____

Gabino Rodriguez-Labato

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 7, 2017
Filed: August 21, 2017

_____

Before WOLLMAN, MELLOY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gabino Rodriguez-Labato (Petitioner) petitions for review of a decision by the Board of Immigration Appeals (the Board) dismissing his appeal from the immigration judge's (IJ) denial of his application for cancellation of removal of a nonpermanent resident alien under 8 U.S.C. § 1229b(b). He argues that the Board erred in concluding that he voluntarily departed the United States under threat of

deportation, thus breaking the required ten-year period of continuous residence. We deny the petition.

On or about August 13, 2009, the Department of Homeland Security (DHS) filed a Notice to Appear (NTA) for Petitioner, a native and citizen of Mexico. Petitioner was incarcerated in Decorah, Iowa, at that time, awaiting trial for assault with intent to inflict damage. The NTA alleged that Petitioner had entered the United States on April 1, 2001, after having voluntarily departed on six occasions. It alleged that Petitioner was removable as an alien present in the United States without being admitted or paroled. 8 U.S.C. § 1182(a)(6)(A)(i). Appearing before the IJ on March 29, 2010, Petitioner denied the date of entry alleged in the NTA, admitted to the remaining factual allegations therein, and conceded removability.

On May 5, 2010, Petitioner filed an application for cancellation of removal under 8 U.S.C. § 1229b(b). DHS moved to pretermit the application for cancellation of removal, arguing that Petitioner had voluntarily departed the United States under threat of deportation on March 23, 2001, and thus had not been physically present for a continuous ten-year period immediately preceding his service with an NTA, as required by § 1229b(b)(1)(A) and 1229b(d)(1).

DHS submitted Form I-826, entitled "Notice of Rights and Request for Disposition," signed by Petitioner and dated March 23, 2001. The form was written in Spanish and was signed by an immigration officer, who certified that Petitioner had read the notice and that it was read to him in Spanish. The English translation of the form stated, under the heading "Notice of Rights":

> You have been arrested because immigration officers believe that you are illegally in the United States. You have the right to a hearing before the Immigration Court to determine whether you may remain in the United States. If you request a hearing, you may be detained in custody or you may be eligible to be released on bond, until your hearing date.

In the alternative, you may request to return to your country as soon as possible, without a hearing.

Under the heading "Request for Disposition," the form offered three options:

[1] I request a hearing before the Immigration Court to determine whether or not I may remain in the United States.

[2] I believe I face harm if I return to my country. My case will be referred to the Immigration Court for a hearing.

[3] I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure.

Petitioner selected the third option. DHS records provided additional details regarding this encounter, including that Petitioner was apprehended, detained, photographed, fingerprinted, and checked against an identification database, and that he voluntarily returned to Mexico.

At a February 27, 2014, hearing before the IJ, Petitioner testified that he had entered the United States in June of 1999. He acknowledged that he signed the Form I-826 on March 23, 2001, and that he understood that the form related to his voluntary departure from the United States. He stated, however, that the immigration officer did not explain that Petitioner gave up his right to an immigration hearing by signing the form; how voluntary departure would work; the consequences of violating the voluntary departure, including a possible civil monetary penalty and the inability to request cancellation of removal or adjustment to permanent resident status for a period of up to ten years; or that a voluntary departure would break his continuous presence in the United States. Petitioner testified on cross-examination that he was

22 years old on March 23, 2001; that on previous occasions he had been apprehended by the Border Patrol and returned to Mexico, including one that had occurred three days earlier; that he never signed a Form I-826 on any of these previous occasions; that he was able to read Spanish; that the Form I-826 he signed was written in Spanish, the officers he spoke to spoke Spanish, and he had no problems communicating with the officers; that he was not free to leave within the United States between the time of his apprehension and his return to Mexico; and that he had previously been convicted of illegal entry into the United States by a federal district court, for which he could have been sentenced to imprisonment but was instead returned to Mexico.

The IJ granted DHS's motion to pretermit on May 7, 2014, finding that Petitioner's return to Mexico on March 23, 2001, was a voluntary departure "under threat of deportation," which broke his continuous presence in the United States. The IJ reasoned that Petitioner's Form I-826 selection to voluntarily leave the United States in lieu of facing formal deportation proceedings showed that he had departed under threat of deportation. That Petitioner was detained, photographed, fingerprinted, and checked against a database prior to his March 23, 2001, voluntary departure also led the IJ to conclude that he had departed under threat of deportation. The Board dismissed Petitioner's appeal, adopting and affirming the IJ's decision. In addition to adopting the IJ's reasoning, the Board also rejected Petitioner's claim that he had not received the necessary warnings for a voluntary departure, stating that "the respondent did not receive a formal grant of voluntary departure, rather, he was permitted to return to Mexico."

"Although the decision to grant cancellation of removal is a discretionary act by the Attorney General that we may not review, we may consider the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility to be considered for the relief." Reyes-Vasquez v. Ashcroft, 395 F.3d 903, 906 (8th Cir. 2005) (citations omitted). "In doing so, we give

-4-

substantial deference to the agency's interpretation of immigration statutes." Id. "Because the Board affirmed the decision of the immigration judge based on a clear-error standard of review for findings of fact, but also added reasoning of its own, we review the two decisions together." Goswell-Renner v. Holder, 762 F.3d 696, 699 (8th Cir. 2014). "The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (citing 8 U.S.C. § 1252(b)(4)(B)).

To be eligible for cancellation of removal under 8 U.S.C. § 1229b(b), an alien must show, among other elements, that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." This continuous period is deemed to end when the alien is served an NTA. Id. § 1229b(d)(1). Because Petitioner was served an NTA on August 13, 2009, he was required to show that he was continuously present in the United States since August 13, 1999.

An alien's continuous presence in this country is broken "when an alien voluntarily departs under threat of deportation." Reyes-Vasquez, 395 F.3d at 907 (quoting Palomino v. Ashcroft, 354 F.3d 942, 944 (8th Cir. 2004)). "When an alien is legally permitted to depart voluntarily, he should 'leave[ ] with the knowledge that he does so in lieu of being placed in proceedings' and therefore has no legitimate expectation that he may reenter and resume continuous presence." Id. (quoting In re Romalez-Alcaide, 23 I. & N. Dec. 423, 429 (2002) (en banc)). "[T]he record must show some evidence that the threat of deportation was expressed by immigration officials and understood by the alien. It is not sufficient that an alien was simply turned back at the border unless there was an express threat of deportation or removal." Ortiz-Cornejo v. Gonzales, 400 F.3d 610, 612 (8th Cir. 2005) (citation omitted).

We agree with the Board and the IJ that Petitioner departed under threat of deportation on March 23, 2001. His Form I-826 selection indicates that he was aware of the threat that he would be removed and of his right to removal proceedings, and that he elected to return to Mexico instead of exercising that right. Moreover, although the fact that he was detained, photographed, fingerprinted, and checked against a database is not by itself sufficient to show a voluntary departure under threat of deportation, it is relevant to show that Petitioner underwent a "formal, documented process." In re Castrejon-Colino, 26 I. & N. Dec. 667, 670-71 (2015) (quoting In re Avilez, 23 I. & N. Dec. 799, 805-06 (2005)). Given these circumstances, the Board and the IJ did not err in concluding that Petitioner departed under threat of deportation.

Petitioner contends that because he did not receive all of the necessary warnings for a voluntary departure and thus did not understand the legal consequences of voluntary departure under threat of deportation, his departure did not break his continuous presence in the United States. Immigration officials are authorized to permit an alien to voluntarily depart in lieu of facing removal proceedings or prior to the proceedings' completion. 8 U.S.C. § 1229c(a). Officials may also allow voluntary departure at the conclusion of the proceedings if certain conditions are met. Id. § 1229c(b). An alien who is permitted to voluntarily depart and fails to do so within the specified time period is subject to a civil penalty between $1,000 and $5,000 and is ineligible to receive several forms of relief for a period of ten years. Id. § 1229c(d)(1). A voluntary departure order must inform the alien of these penalties. Id. § 1229c(d)(3); 8 C.F.R. § 240.25(b). A decision regarding voluntary departure must be communicated on a Form I-210 and may not be granted unless the alien requests the departure and agrees to its terms and conditions. 8 C.F.R. § 240.25(c).[1]

---

[1]The same requirements were in effect when Petitioner departed the United States on March 23, 2001. See 8 U.S.C. § 1229c (2001); 8 C.F.R. § 240.25 (2001).

-6-

As stated earlier, the Board dismissed this claim because Petitioner "did not receive a formal grant of voluntary departure" but was instead "permitted to return to Mexico." Similarly, the government argues that Petitioner's "voluntary return does not emanate from the same regulatory or statutory scheme" described above. Resp't's Br. 23-24. The government contends that "[v]oluntary departure under [the regulatory scheme], which requires certain warnings by the agency, is reserved for aliens placed in removal proceedings under . . . 8 U.S.C. § 1229a," and that because Petitioner "waived the opportunity to be placed in removal proceedings so as to return to Mexico," those warnings were not required in this case. Id. at 24.

We reject the government's suggestion that the warning requirement set forth in 8 C.F.R. § 240.25 is reserved for aliens placed in removal proceedings under 8 U.S.C. § 1229a. Section 1229c(a) authorizes the grant of voluntary departure either prior to the conclusion of removal proceedings under § 1229a or *in lieu of* such proceedings. The requirement under 8 C.F.R. § 240.25 to inform an alien of the conditions of voluntary departure and the penalties for any breach applies to any grant of voluntary departure under 8 U.S.C. § 1229c(a) and thus applies when the alien waives removal proceedings and decides to depart voluntarily.

Nonetheless, we conclude that the failure to satisfy the warning requirement does not preclude a finding of a voluntary departure under threat of deportation sufficient to break the ten-year period of continuous presence required to be eligible for cancellation of removal under 8 U.S.C. § 1229b(b). As earlier described, our cases and the Board's have held that an alien must depart under "an expressed and understood threat of deportation," and "with the knowledge that he does so in lieu of being placed in proceedings" in order to break continuous presence. Reyes-Vasquez, 395 F.3d at 907 (quoting In re Romalez-Alcaide, 23 I. & N. Dec. at 429); see also Ortiz-Cornejo, 400 F.3d at 612 ("[T]he record must show some evidence that the threat of deportation was expressed by immigration officials and understood by the alien. It is not sufficient that an alien was simply turned back at the border unless

-7-

there was an express threat of deportation or removal." (citation omitted)). Had Petitioner received the warnings set forth in 8 C.F.R. § 240.25, they would have amply demonstrated that Petitioner departed under a threat of deportation. See Morales-Morales v. Ashcroft, 384 F.3d 418, 427 (7th Cir. 2004) (reasoning that the "elaborate conditions" set forth in 8 C.F.R. § 240.25 demonstrate a threat of deportation). For the reasons discussed earlier, however, we conclude that even without receiving those warnings, Petitioner voluntarily departed the country under a threat of deportation, thus breaking his continuous presence here.

The petition for review is denied.

_____