# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-3321/07-1456

_____

Nasri George Al Yatim;          *
Jihan Elias Al Yatim; Eyad Nasri    *
Al Yatim; George Nasri Al Yatim,   *
                                    *
        Petitioners,          *
                                    * Petition for Review
        v.                    * of an Order of the
                                    * Board of Immigration Appeals.
Michael B. Mukasey, United      *
States Attorney General,[1]       *
                                    *
        Respondent.        *

_____

Submitted: October 18, 2007
Filed: July 3, 2008

_____

Before RILEY, MELLOY, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

The Immigration and Naturalization Service (INS) initiated removal proceedings against Nasri George Al Yatim (Al Yatim) and his family, Jihan Elias Al Yatim, Eyad Nasri Al Yatim, and George Nasri Al Yatim (collectively, Al Yatims). The Al Yatims requested asylum, withholding of removal, and protection under the

_____

[1]Michael B. Mukasey is substituted as United States Attorney General pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

Convention Against Torture (CAT). An Immigration Judge (IJ) determined the Al Yatims were not likely to experience either persecution on the basis of a protected classification, or torture if returned to the Palestinian territory. The Board of Immigration Appeals (BIA) affirmed. After the radical Islamic political group Hamas won electoral control of the Palestinian Authority, the Al Yatims filed a motion to reopen, arguing that changed country conditions warranted a reevaluation. The BIA denied the motion to reopen. The Al Yatims challenge both the original agency determination they were ineligible for relief, and the denial of their motion to reopen. These petitions for review have been consolidated. We deny both petitions.

## I.    BACKGROUND

Al Yatim is a Palestinian Christian. Prior to coming to the United States, Al Yatim lived with his family in Beit Sahour, near Bethlehem, in the Palestinian territory of the West Bank. In the late 1980's, many young Palestinians, mostly Muslims, undertook an uprising against the Israeli government, known as the "Intifada." These Palestinians erected barricades and attacked the Israeli army by throwing rocks and other projectiles. The Al Yatims' house was located in the center of the conflict. At night, the Israeli army required the Al Yatims, at significant risk, to enter the street to clear rocks and other debris. During these clearings, the Al Yatims were fired upon, and Al Yatim suffered a significant back injury from the work, requiring surgery. Al Yatim was beaten several times by Israeli troops and his parked car was destroyed by gun fire exchanged between the warring parties.

In 1995, the area came under control of the Muslim dominated Palestinian Authority. In 2000, wide scale hostilities again erupted in a second "Intifada." Al Yatim testified that because many Christians were not participating in opposing the Israelis, Muslim animosity toward the Christians increased. Muslims even began firing weapons and throwing stones at the Israelis from Christian dominated neighborhoods, in order to draw Israeli fire to those areas. The Al Yatims' backyard water tank and the windows of his home were damaged repeatedly.

The Al Yatims observed and experienced numerous individual difficulties with Muslim Palestinians. Al Yatim testified (1) his friend was beaten after blowing his horn at a Muslim driver; (2) he had some tools stolen and Palestinian authorities did nothing; (3) the authorities would help Muslims, but would do little to help Christians; (4) his business, making crosses and religious sculptures for tourists visiting Bethlehem, was seriously vandalized by a Muslim employee, after Al Yatim declined the employee's request for a salary increase; and (5) Muslims would harass Christian women, making sexual comments and touching them inappropriately.

After overstaying their visas and being charged with removability, the Al Yatims conceded removability. The IJ denied asylum, withholding of removal, and CAT relief. The BIA upheld this decision on appeal. After Hamas, a radical Muslim group, won electoral control of the Palestinian Authority, the Al Yatims filed a motion to reopen the BIA proceedings, on the basis that changed circumstances warranted reconsideration. This motion was denied.

## II. STANDARDS OF REVIEW

Where "[t]he BIA's decision is the final decision of [the] agency . . . it is the subject of our review." Salkeld v. Gonzales, 420 F.3d 804, 808 (8th Cir. 2005) (citation omitted). "To the extent, however, that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Id. (citation omitted). When we review a BIA determination regarding eligibility for asylum, the BIA's findings are reviewed under a substantial evidence standard. See Zheng v. Gonzales, 415 F.3d 955, 959 (8th Cir. 2005). The BIA's findings regarding eligibility for withholding of removal or CAT relief are also reviewed for substantial evidence. See Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007). This is an "extremely deferential standard of review[.]" Salkeld, 420 F.3d at 809. Under the substantial evidence standard, the agency's findings of fact "must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary

-3-

conclusion but *compels* it." Sultani v. Gonzales, 455 F.3d 878, 881 (8th Cir. 2006) (citation omitted) (emphasis added).

## III.    RELIEF REQUIREMENTS

The Attorney General has discretion to grant asylum to a refugee. See Makatengkeng v. Gonzales, 495 F.3d 876, 881 (8th Cir. 2007). To establish eligibility for asylum, the Al Yatims must show they are "unable or unwilling to return to . . . [the West Bank] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "[P]ersecution is an extreme concept" that excludes "[l]ow-level intimidation and harassment." Shoaira v. Ashcroft, 377 F.3d 837, 844 (8th Cir. 2004) (internal quotation marks and citations omitted). Persecution includes the credible threat of death, torture, or injury to one's person or liberty on account of a protected ground. See Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002). If past persecution is established, a well-founded fear of future persecution must be presumed. 8 C.F.R. § 1208.13(b)(1). "Without the benefit of the presumption, an asylum applicant may prove a well-founded fear of future persecution by showing an objectively reasonable fear of particularized persecution." Makatengkeng, 495 F.3d at 881 (internal quotation marks and citation omitted). "The fear must also be 'subjectively genuine.'" Id. (citation omitted).

Although non-discretionary, "[t]he burden of proof for withholding of removal is higher than that required for asylum." Aziz v. Gonzales, 478 F.3d 854, 858 (8th Cir. 2007) (citation omitted). To qualify for withholding of removal, the Al Yatims must show a clear probability of persecution in the proposed country of removal on the basis of race, religion, nationality, membership in a particular social group, or political opinion. See Mouawad, 485 F.3d at 411 (citing 8 C.F.R. § 1208.16(b)).

To obtain CAT relief, the Al Yatims must show they will "more likely than not" suffer torture if returned to Palestine. 8 C.F.R. § 1208.16(c)(2). "Torture is defined

-4-

as an act by which severe pain or suffering, whether physical or mental, is intentionally inflicted, and it is an extreme form of cruel and inhuman treatment; it does not include lesser forms of cruel, inhuman, or degrading treatment." Krasnopivtsev v. Ashcroft, 382 F.3d 832, 840 (8th Cir. 2004) (citation omitted).

## IV.   DISCUSSION
### A.   Asylum

The Al Yatims assert two manners in which they will be subjected to persecution if returned to the Palestinian territory. First, the Al Yatims contend they were persecuted, and face future persecution, by the government of Israel on the basis of their Palestinian ethnicity. Second, the Al Yatims claim they face persecution "at the hands of the Muslim Palestinian authorities" on the basis of their Christianity.[2]

---

[2]As an initial matter, the government contends the Al Yatims' claim they suffered persecution as members of a "particular social group" is waived for failure to exhaust the issue during the agency proceedings, and failure to specifically articulate the nature of the "particular social group" on appeal. During the agency proceedings and on appeal, the Al Yatims only claimed persecution on the bases of their religion and status as Palestinians. Thus, the government is correct that any argument the Al Yatims were persecuted on account of their membership in any other "particular social group" is waived. See 8 U.S.C. § 1252(d)(1); see also Viking Supply v. National Cart Co., Inc., 310 F.3d 1092, 1099 (8th Cir. 2002) (stating "it is not this court's job to research the law to support an appellant's argument." (internal alterations and citations omitted)). The Al Yatims may be arguing their religion and ethnicity *are* the particular social groups on the bases of which they will be subject to persecution. This is misguided, given that "religion" and "nationality" are separately listed as protected classes. See 8 U.S.C. § 1101(a)(42)(A). We consider the Al Yatims' claims only as they relate to their religion and ethnicity.

### 1.    Persecution by the Israeli Government

The IJ determined the Al Yatims failed to demonstrate they would be persecuted by the Israeli government on the basis of their Palestinian ethnicity or Christianity. The BIA affirmed this finding, noting "the lead respondent stated that he does not fear harm from the Israeli government." The BIA further determined the difficulties the Al Yatims face in the Palestinian territories are not "on account of" a protected ground, but rather simply due to a "general state of unrest throughout the area."

The record does not compel a different conclusion. As to the Al Yatims' contention they faced past persecution from the Israeli government based upon their status as Palestinians, the record supports the BIA's determination that these difficulties were part of a "general state of unrest throughout the area." Such a situation is typically insufficient to qualify as persecution. See Mohamed v. Ashcroft, 396 F.3d 999, 1003 (8th Cir. 2005) ("Harm arising from general conditions such as anarchy, civil war, or mob violence will not ordinarily support a claim of persecution." (citations omitted)). There is no indication the Israelis' treatment of the Al Yatims was particularized as to them. On the contrary, Al Yatim admitted the Israelis selected "any Arab they [could] get to clean the streets[,]" and the violence surrounding their home was due to the home's unfortunate location where "the Muslims were at one end of the street and the Israelis at the other." Thus, the agency's determination the Al Yatims did not face past persecution by the Israeli government is supported by substantial evidence. See id. ("To be eligible for asylum, the harm suffered must be particularized to the individual rather than suffered by the entire population." (citation omitted)).

Even without a showing of past persecution by the Israelis, the Al Yatims could still earn relief by demonstrating a fear of particularized persecution that is both objectively reasonable and subjectively genuine. Makatengkeng, 495 F.3d at 881.

However, as the BIA noted, the record belies such a finding, given that Al Yatim testified he has no fear of the Israeli government.

## 2. Persecution by Muslim Palestinians

The IJ further found the Al Yatims had not suffered, and would not likely suffer, persecution at the hands of Palestinian Muslims whom the authorities were unwilling or unable to control. The IJ noted many of the harms the Al Yatims identified were not based upon the Al Yatims' religion, but arose out of road rage, employment disputes, or generalized difficulties in the region. In so doing, the IJ discounted affidavits and evidence indicating Muslims had told Al Yatim's parents they knew about the asylum application and the Al Yatims would be harmed if they returned to the Palestinian territories. The IJ discounted this evidence because the affidavits were (1) "double or triple hearsay," (2) not notarized or authenticated, and (3) their value was undercut by the fact Al Yatim's parents voluntarily returned to the region despite the supposed threats and persecution faced there.

The claim of persecution by Palestinian Muslims presents a closer question than the claim relating to the Israeli government. Although the record might support a different conclusion than that drawn by the IJ and BIA, the record does not *compel* it, as required for us to grant relief. See Sultani, 455 F.3d at 881.

The Al Yatims' situation is highly analogous to Lengkong v. Gonzales, 478 F.3d 859 (8th Cir. 2007). In Lengkong, the petitioner was an Indonesian Christian, who had held leadership positions in her church. Id. at 861. On one occasion, Lengkong and her husband were stopped in their car by a group of men wielding sticks. Id. The men demanded the couple remove their "Jesus is my Savior" bumper sticker, and smashed the car windows before the couple could drive away. Id. In a separate incident, a group of people threw rocks at the couples' home and vandalized their fence. Id. During a third incident, Lengkong was singing in a choir at her church when a group of people attacked, vandalized, and burned down the facility.

Id. Lengkong testified that, during all three of these incidents, the attackers yelled "God is the Greatest!" and in the home incident they yelled "Finish the Christians!" Id. at 861 n.2. Finally, while riding a bus and wearing a cross necklace, a man approached Lengkong, pressed a knife against her, asked if she was a Christian, and only left her alone when she gave him a gold ring. Id. at 861, 863. Even in the face of such evidence of mistreatment on the basis of her religion, the court affirmed the BIA's denial of Lengkong's request for asylum. Id. at 864. The panel affirmed the IJ's determination that not all of the incidents were religiously motivated because this determination was supported by substantial evidence. Id. at 862. In so doing, the court deferred to the agency's interpretation that the attack on Lengkong's home was part of widespread violence, and not particularized to them. Id. The court also deferred to the agency's interpretation the attack on the bus was not religiously motivated, but was simply "a criminal act of robbery," notwithstanding the fact Lengkong had been wearing a cross necklace and was asked if she was a Christian. Id. at 862-63. Finally, although the court recognized what Lengkong described was "serious[,]" the court concluded "the injuries suffered by [Lengkong] do not conclusively rise to the level of persecution." Id. at 863.

Likewise, although the Al Yatims had a hard life in the West Bank, the difficulties they faced do not rise to the level of persecution. Even more so than the petitioner in Lengkong, the Al Yatims mostly faced difficulties arising as a result of generalized violence. For example, even though Al Yatim's business involved making crosses, the IJ reasonably interpreted the vandalism as relating to an employment dispute rather than his Christianity, and the theft of his tools was simply generalized crime. Although Al Yatim's wife had been sexually harassed, such treatment does not equate with the extreme concept of persecution. See Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006) ("Even minor beatings or limited

detentions do not usually rise to the level of past persecution.").[3]  Finally, the IJ reasonably discounted evidence Al Yatim's parents had told him threats had been made against the family.  As the IJ noted, this evidence was unauthenticated, and the fact the parents willingly returned to the region undercut the viability of their claim.  See Setiadi, 437 F.3d at 714.

## B.    Withholding of Removal and CAT Relief

The IJ denied withholding of removal and CAT relief, reasoning that because the Al Yatims could not meet the lower standard required for asylum, they also could not meet the higher standard needed to obtain withholding of removal, and had not presented any evidence they would face torture if returned to the Palestinian territory.  This determination is, for the same reasons outlined in the previous section, supported by substantial evidence.  The conclusion is also legally correct.  See Samedov v. Gonzales, 422 F.3d 704, 708-09 (8th Cir. 2005) (explaining that if a petitioner is found ineligible for asylum for failure to demonstrate a well-founded fear of persecution, he is ineligible for withholding of removal, because it requires a clear probability of future persecution).  Additionally, although "[t]orture . . . is not coterminous with persecution[,] . . . only in limited circumstances, such as when an alien claims that torture would occur for a reason other than one of the statutory grounds giving rise to refugee status . . . must an IJ examine a claim for relief under [the CAT] separately from claims for asylum and for withholding removal[.]"  Id. at 708.  Because the reasons the Al Yatims claim they fear persecution are identical to the reasons they claim they fear torture, the CAT claim fails alongside the Al Yatims' asylum claim.  See id. at 708-09 (concluding no independent consideration of a CAT claim is required where the petitioner "[did] not predict any future acts against him that would qualify as torture even if they failed to be persecution").

---

[3]The Al Yatims also point to difficulties encountered by friends and relatives.  The panel is, however, precluded from considering evidence not particularized to the petitioners.  See Lengkong, 478 F.3d at 863 n.5.

## C.    Motion to Reopen

Although the election of Hamas may cause increased difficulties for Christians in the Palestinian territories, the Al Yatims have not identified any additional difficulties they will face which would rise to the level of persecution.  To support changed country conditions, the Al Yatim's submitted news articles reporting parliamentary elections placing Hamas in control of the Palestinian territories.  The BIA found the articles did not demonstrate significantly changed country conditions.  After the Hamas election, acts of violence occurred, but for years before the election, hostilities existed between the Palestinians and Israelis, and numerous incidents of violence occurred, resulting in a general state of unrest.  The BIA previously held these previous conditions did not constitute persecution or torture of the Al Yatims based on a protected ground under the Immigration and Nationality Act (INA).  As described earlier, the evidence does not compel a contrary ruling.  The Al Yatims' new evidence does not show country conditions have materially changed.  Cf. Quomsieh v. Mukasey, No. 07-2279, slip op. at 2 (8th Cir. April 18, 2008) (per curiam) (unpublished).

The Al Yatims also have not explained how the new circumstances would impact them specifically, as opposed to creating a generalized increase in regional hostilities.  This omission supports the conclusion the BIA did not abuse its discretion in denying the motion to reopen.  See Mohamed, 396 F.3d at 1003.  The record also demonstrates Al Yatim's Christian parents have remained in the region unharmed, which further undercuts the Al Yatims' claim.  See Setiadi, 437 F.3d at 714 (finding no error in the agency's determination the petition lacked a well-founded fear of persecution where there was no showing of nationwide persecution of Christians, and the petitioner's family remained unharmed in a contentious region).  Based on this record, the BIA did not abuse its considerable discretion in denying the motion to reopen.

-10-

## V. CONCLUSION

The record does not compel a conclusion the BIA erred in finding the Al Yatims ineligible for asylum, withholding of removal, or CAT relief. The BIA did not abuse its discretion in denying the Al Yatims' motion to reopen. The consolidated petitions for review are denied.

_____