# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1294

_____

| | | |
|---|---|---|
| Aliaksandr Ladyha, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Petition for Review of an Order of |
| Eric H. Holder, Jr., Attorney General, | * | the Board of Immigration Appeals. |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 17, 2009
Filed: November 24, 2009 (Corrected December 4, 2009)

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Petitioner Aliaksandr Ladyha, a native and citizen of Belarus, sought asylum, withholding of removal, protection under the Convention against Torture (CAT), and voluntary departure. The Immigration Judge (IJ) denied all requested relief and the Board of Immigration Appeals (BIA) affirmed by order of November 23, 2007. Ladyha petitioned this court for review. We dismissed the petition after he filed a motion to reopen seeking a status adjustment based on his marriage to a United States citizen. The BIA granted Ladyha's motion to reopen and remanded the case to the IJ. Ladyha's spouse subsequently withdrew her I-130 visa petition. On January 13, 2009,

the BIA vacated its decision remanding the case and reinstated its November 23, 2007 order, and Ladyha again petitioned this court for review. We deny the petition.

Ladyha entered the United States as a non-immigrant business visitor on May 26, 2004. He overstayed his visa and concedes removability. Ladyha applied for asylum on July 21, 2004. He is a Pentecostal Christian, a religious minority in Belarus. According to Ladyha, he has been subjected to persecution on account of his religion and political advocacy and would face future persecution if deported.

Ladyha asserts that because of his Pentecostalism, he was mistreated by both teachers and students in his public school, the former purposefully lowering his grades and using a stick against him and the latter pushing him and throwing stones at him. In 2002, Ladyha was once threatened at knifepoint by assailants who sought to show him who was "king" of the city. Fellow citizens intervened on his behalf. Ladyha was unharmed and he did not report the incident to the police. Ladyha asserts that he could not find a job because of his religion, but he admitted that it was only government employment from which he was foreclosed and that he successfully found other employment.

In 2002, the government of president Alexander Lukashenko imposed new rules on religious minority groups, compelling them to register and submit to government regulation. Ladyha claims that these requirements would make it difficult for Ladyha to form his own church. Record evidence shows that the overwhelming majority of religious groups that sought government registration received it. Ladyha and other members of his congregation successfully registered with the government and founded a new church in Belarus, Salvation Church. The government also paid for Ladyha's education at the Institute of Theology in Minsk from 2001-2003, from which he received a diploma entitling him to open his own church and share his religion with others in Belarus. In 2003, the Belarus government permitted Ladyha

to leave the country to continue his religious studies in Croatia, although Ladyha claims that the issuing official did not understand the true reason for his departure.

Ladyha has also raised an issue with regard to military service and government harassment of his family regarding Ladyha's whereabouts. The IJ and BIA understood Ladyha's claim to be that he fears that the Belarus government will jail him upon his return because of his refusal, on religious grounds, to join the military. Record evidence shows that Belarus has mandatory conscription. Unarmed military service is available for conscientious objectors who refuse to take up arms on religious grounds, and in any case Ladyha testified that he was willing to serve in the Belarus army and that he explored the possibility of joining the United States Army. Letters from Ladyha's mother and friend indicate that the government seeks Ladyha's enlistment and may consider him to have evaded his military duty.

According to Ladyha, his conscription is pretextual and the government is harassing his family about his whereabouts because of his Pentecostalism. Yet Ladyha's family, Pentecostal Christians actively involved in Salvation Church, live unharmed in Belarus. His mother works for a government organization and his stepfather owns his own business after previous government service despite their religious convictions.

Ladyha also asserts that he was subjected to persecution on account of his political beliefs. Ladyha contributed to an antigovernment website while in Croatia. He received an email message indicating that he was not allowed to publish information critical of Lukashenko. Ladyha did not produce evidence of what he wrote, the email he received, the identity of its source, or any consequences he endured beyond the one warning which did not include a threat of harm.

The IJ found Ladyha's testimony generally credible. While she acknowledged possible mistreatment, the IJ concluded that Ladyha had not established a well-

founded fear of persecution on any ground or a likelihood that he would be tortured if removed to Belarus, and the BIA agreed.

Ladyha has not challenged the denial of his application for CAT relief, 8 C.F.R. § 1208.16(c)(2), or voluntary departure, id. at § 1229c(b)(1)(A).[1] Therefore we review only the decision about his eligibility for asylum and withholding. An asylum applicant must prove that he cannot return to his country of origin "because of persecution or a well-founded fear of persecution on account of . . . religion . . . or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Persecution is the infliction or threat of death, torture, or injury to one's person or freedom, on account of race, religion, nationality, membership in a particular social group, or political opinion." Davila-Mejia v. Mukasey, 531 F.3d 624, 628 (8th Cir. 2008) (quotation omitted). An applicant may qualify for asylum by proof of either past persecution or a well founded fear or future persecution. 8 C.F.R. § 208.13(b).

"We review the BIA's decision as the final agency action, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Lovan v. Holder, 574 F.3d 990, 993 (8th Cir.2009)(quotation omitted). We review the record for substantial evidence and affirm unless the evidence was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Gomez v. Gonzales, 425 F.3d 543, 545 (8th Cir.2005), citing I.N.S. v. Elias-Zacarias, 502 U.S. 478, 484 (1992).

Ladyha has not demonstrated that the record evidence compels reversal on the basis of past persecution. While Ladyha testified he was threatened at knifepoint, the

---

[1] In his brief, Ladyha indicated that he sought review of the denial of voluntary departure but provided no substantive argument on the issue. In any case, because he was not physically present in the United States for at least one year prior to service of his notice to appear Ladyha is ineligible for voluntary departure. 8 U.S.C. § 1229c(b)(1)(A).

"king of the city" comment by his assailants is accurately characterized as "exaggerated, non-specific, or lacking in immediacy." Corado v. Ashcroft, 384 F.3d 945, 947 (8th Cir. 2004). Ladyha was unharmed. See Quomsieh v. Gonzales, 479 F.3d 602, 606 (8th Cir.2007) ("Absent physical harm, the incidents of harassment [and] unfulfilled threats of injury . . . are not persecution."). Similarly, the warning email in response to Ladyha's online antigovernment postings is insufficiently specific or imminent to constitute persecution. Ladyha suffered no adverse consequence beyond the single warning and did not proffer the message or the postings it criticized. Ladyha's testimony about schoolchildren throwing stones at him and teachers harassing him because of his religion do not, by themselves or in conjunction with other record evidence, compel reversal. Persecution is an "extreme concept that does not encompass low-level intimidation and harassment." Gutierrez-Olivares v. Mukasey, 533 F.3d 946, 949 (8th Cir. 2008) (quotation omitted). Likewise, Ladyha's inability to get a government job because of his religion did not constitute infliction or threat of injury to his person or freedom. After all, he secured other employment.

Viewing this evidence cumulatively, we cannot conclude that the denial of the relief Ladyha requested was unreasonable. Ladyha cites Matter of O-Z & I-Z-, 22 I. & N. Dec. 23 (BIA 1998) in support of his petition. The harassment Ladyha encountered was modest compared to the relentless life threatening persecution of the father and son applicants in O-Z. There, the father was subjected to frequent inflammatory anti Semitic messages at his home, including personal handwritten attacks, vandalizing of his apartment, and multiple physical assaults directed specifically at him and denigrating his religion and political beliefs. Id. at 24. One beating he received after a public political speech was so bad he required stitches. Id. His son was beaten and abused so intensely at school that he ceased attending. Id. Both the IJ and BIA concluded that the aggregation of these incidents constituted substantial evidence of past persecution. Id. at 27. By contrast, Ladyha was physically unharmed outside of school, and the abuse he suffered there did not prevent him from graduating and then attending seminary at the government's expense. The

vague "king of the city" comment was part of a single incident that resulted in no physical harm. That Ladyha's evidence may have been sufficient to support the granting of asylum is "beside the point" when it was also reasonable to deny the application. Elias-Zacarias, 502 U.S. at 481 n.1.

Even if an applicant has not shown past persecution, he can still base a successful petition on a well founded fear of future persecution. 8 C.F.R. § 208.13(b)(2). It appears that Ladyha may be prosecuted for fleeing the military service, but prosecution for draft evasion is not persecution. Elias-Zacarias, 502 U.S. at 489 n.6 ("[T]he INS has adhered 'to the long-accepted position that it is not persecution for a country to require military service of its citizens.'), citing Matter of A-G-, 19 I. & N.Dec. 502, 506 (BIA 1987). See also Mohammed v. U.S. Atty. Gen., 547 F.3d 1340, 1351 (11th Cir. 2008) (explaining that "courts have not deemed it persecution for a country to require military service of its citizens" and discussing two exceptions inapplicable here). Ladyha states that the IJ and BIA misunderstood his position, thinking that his claim was that he would be forced to serve in the Belarus military despite his religion's prohibition not to take up arms, an argument undercut by record evidence that Ladyha does not object to serving in the army. According to Ladyha, the IJ and BIA did not consider his argument that he was targeted only because of his Pentecostalism and that the enlistment office's efforts to find him are pretextual. The IJ explicitly acknowledged this argument, however, before dismissing it because "all the evidence in the record" points to Ladyha having an unfulfilled military duty that the government is seeking to enforce. Considering evidence that the Belarus military conscripts all men between ages eighteen and twenty seven and allows religious conscientious objectors to serve in unarmed positions, attributing any other motive to the government's conscription of Ladyha is speculative.

Ladyha also cites various reports of religious oppression in Belarus to support his claim of future persecution. While there is evidence that religious freedom is confined in the country, Ladyha's family has been able to practice their religion

without harm. Ladyha attended seminary on a government scholarship and was permitted to leave the country to advance his religious studies in Croatia. Record evidence supports the determination that it was "entirely speculative" to suggest that the government explicitly permitted him to leave the country because it misunderstood his motives. Ladyha's mother works for the Belarus government, and his stepfather did previously, and his sister attends school–all without government interference despite their Pentecostalism. Further, Ladyha's assertion that he will be prevented from achieving his dream of becoming a Christian minister in Belarus is undermined by record evidence that nearly all religious communities required to register with the government did so successfully, and Ladyha's own testimony was that his theological diploma entitles him to open a church and teach others about his religion. There was substantial record evidence to support the BIA's decision.

Withholding of removal is required where an applicant shows a "clear probability" that his life or freedom would be threatened on account of a protected ground. Zhuang v. Gonzales, 471 F.3d 884, 891 (8th Cir.2006); 8 U.S.C. § 1231(b)(3). "The clear probability standard for withholding of removal is more onerous than the well-founded fear standard for asylum." Malonga v. Mukasey, 546 F.3d 546, 551 (8th Cir. 2008). As the BIA reasonably concluded that Ladyha did not meet the lesser burden of establishing a basis for asylum, he cannot show that withholding is necessary.

Accordingly, we deny the petition for review.

_____