# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 19-1506

———————————————————

Elvira Meza Cano

*Petitioner*

v.

William P. Barr, Attorney General of United States

*Respondent*

————————

Petition for Review of an Order of the
Board of Immigration Appeals

————————

Submitted: March 12, 2020
Filed: April 23, 2020

————————

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

————————

SHEPHERD, Circuit Judge.

Elvira Meza Cano (Meza) petitions for review of an order of the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ) denial of her applications for asylum, withholding of removal under the Immigration and Nationality Act, and protection under the Convention Against Torture (CAT). Having jurisdiction under 8 U.S.C. § 1252, we deny the petition.

I.

Meza, a native and citizen of Mexico, entered the United States at the San Ysidro, California port of entry on or about September 18, 2014. On October 30, 2014, the Department of Homeland Security initiated removal proceedings against Meza, charging her as removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) (providing that any immigrant who, at the time of application for admission, "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . . is inadmissible"). Meza conceded that she was removable as charged, but applied for relief from removal in the forms of asylum, withholding of removal, and protection under the CAT.

In a hearing before an IJ, Meza claimed that she feared persecution in Mexico due to her membership in a particular social group consisting of "immediate family members of Alberto Jorge Gonzalez Meza," her son. Meza testified that she was visiting Alberto at his home in Actopan, Mexico in August 2014 when five or six men entered the home. The men were wearing ski masks and dark colored clothing, which Meza thought looked blue. She could not tell if the men "were wearing uniforms or not." The men proceeded to beat Alberto and demand money from him. Meza tried to intervene, but one of the men pushed her back into a bedroom, pointed a gun at her, and yelled at her to "get back in there or the same thing [wa]s going to happen to [her]." As the men continued to beat Alberto, Meza heard them exclaim that members of the Zeta drug cartel "were nothing" and that a drug cartel called "the Gulfos were now in charge." The men dragged Alberto out of the house, and Meza heard a truck or van drive away. Before leaving, the men stole "anything of value" from the house, including laptops, phones, and televisions.

The next morning, Meza visited her nephew who works at the "municipal house" where the President[1] of Actopan also works. Meza told her nephew about the incident, and he suggested that she file a police report. Meza explained to him that she did not want to file a police report because the kidnappers threatened to kill her if she went to the police. Later that day, Meza was searching the town for her son when an anonymous person called Alberto's phone and alerted Meza to a specific location where she could find Alberto. Meza went to that location, but Alberto was not there. A few days later, Meza discovered that her son had died and that his body was at the morgue. The morgue officials informed Meza that she would need to file a police report in order to remove Alberto's body. Meza told them that she would not file a police report because she would be killed. She turned to her nephew for help, and he suggested that she contact the President. With the President's help, Meza was able to remove Alberto's body from the morgue without filing a police report.

Meza testified that, although the kidnappers had identified themselves as members of the Gulfo Cartel, she believed that they were actually rogue police officers who were working with the Zeta Cartel. She explained that Actopan is controlled by the Zetas, and that the Gulfos would be killed if they entered the area. Meza also testified that she believes the President and the police are Zetas and, thus, she never told the President or the police about the men who kidnapped her son. She explained that her belief is based on "all of the rumors that people hear" and "the things that go on in town." Additionally, she noted that prior to Alberto's kidnapping, there had been an incident in which the President brought a "foreigner" to Alberto's previous house. The "foreigner," a man from outside of town, told Alberto that his "boss" liked Alberto's house and then threatened Alberto with a gun. Alberto left the house out of fear, and the "foreigner" threw an envelope with a small

---

[1]Meza explained that the role of a town's "president" in Mexico is similar to that of a town's mayor in the United States.

amount of money at Alberto. According to Meza, "the Zeta" boss then moved into Alberto's house.

Thereafter, Alberto rented another home and set up a motorcycle workshop. Meza testified that "messengers" began extorting Alberto. They would show up to his workshop and tell him that "the boss" wanted him to repair their motorcycles. Alberto would fix the motorcycles for free because he believed they would kill him if he refused. Meza testified that just a few days before the kidnapping, she was at Alberto's workshop when a white truck pulled up. The men in the truck started talking to Alberto and Meza heard Alberto yell, "What money? I don't have any money." When the men left, Alberto told Meza that the men in the truck were "now going to fuck with him."

Meza testified that she does not believe anything has changed in Actopan since she came to the United States, and she does not think anyone has investigated Alberto's death. Meza also stated that she has siblings, aunts, and uncles who continue to live in Actopan. While none of Meza's family members in Actopan have received any threats, some of them have been contacted regarding Meza's whereabouts. Meza's sister, Esperanza, informed Meza that she received anonymous calls asking for Meza's location. Meza's aunt informed her that a group of men in a van had asked about Meza's whereabouts. Additionally, prior to entering the United States, Meza visited her cousin at his home in Tijuana. After Meza left, unidentified men came to her cousin's house looking for Meza.

Meza testified that she is unsure if the people looking for her are Zetas, but she believes that no one else would have a reason to search for her. Further, Meza testified that she does not believe that she could safely move anywhere else in Mexico, because the Zetas could be located anywhere in the country. She believes the Zetas would be able to find her and that they would kill her. Finally, Meza does not believe that the Mexican police or government would protect her, or that they

want to protect her. She stated that, in addition to the President and police, "the government itself is the Zetas."

The IJ denied Meza's applications for asylum, withholding of removal, and protection under the CAT. As to her requests for asylum and withholding of removal, the IJ found that Meza did not endure past persecution because she did not suffer harm rising to the level of persecution or show that the Mexican government condoned or was unable or unwilling to control the conduct of the alleged persecutors. Further, the IJ found that Meza did not demonstrate a well-founded fear of future persecution because she did not show that such a fear is objectively reasonable or that she could not avoid the feared persecution by relocating in Mexico. As to her request for protection under the CAT, the IJ found that Meza did not suffer past torture, that she could avoid the possibility of torture by relocating, and that she did not show that a public official would acquiesce in her torture by a cartel. The BIA affirmed the IJ's decision. This appeal follows.

## II.

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Davila-Mejia v. Mukasey, 531 F.3d 624, 627 (8th Cir. 2008). We review questions of law de novo, and we review the agency's factual determinations, including its decision that an applicant has failed to establish eligibility for asylum, withholding of removal, or CAT relief, under the substantial evidence standard. De Castro-Gutierrez v. Holder, 713 F.3d 375, 379 (8th Cir. 2013); see Al Yatim v. Mukasey, 531 F.3d 584, 587 (8th Cir. 2008) (reviewing denials of asylum, withholding of removal, and CAT relief for substantial evidence). Under this "extremely deferential standard of review[,] . . . this court will not reverse the agency's decision unless the petitioner demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner."

Mejia-Ramos v. Barr, 934 F.3d 789, 792 (8th Cir. 2019) (internal citation and quotation marks omitted).

## A.

To establish eligibility for asylum, Meza must show that she is a "refugee," meaning that she "is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, [Mexico] because of persecution or a well-founded fear of persecution on account of . . . [her] membership in a particular social group" consisting of Alberto's immediate family. 8 U.S.C. § 1101(a)(42)(A). To obtain withholding of removal, Meza must demonstrate "a clear probability that [her] life or freedom would be threatened on the basis of [her membership in a particular social group consisting of Alberto's immediate family] if removed to [Mexico.]" Osonowo v. Mukasey, 521 F.3d 922, 926 (8th Cir. 2008). Entitlement to withholding of removal requires an even greater showing than a claim of asylum. Id.

Meza first argues that the BIA erred in finding that she did not suffer past persecution in Mexico on account of her status as a member of Alberto's immediate family.[2] Persecution "involves the infliction or [credible] threat of death, torture, or injury to one's person or freedom, on account of a protected characteristic." Malonga v. Holder, 621 F.3d 757, 764 (8th Cir. 2010). It "is an extreme concept that excludes low-level intimidation and harassment." Al Yatim, 531 F.3d at 587 (internal quotation marks and alterations omitted). "Past persecution does not normally include unfulfilled threats of physical injury[.]" Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006). Rather, "[t]hreats alone constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant

---

[2]The parties do not dispute the BIA's finding that Alberto's immediate family constitutes a cognizable social group.

actual suffering or harm." La v. Holder, 701 F.3d 566, 571 (8th Cir. 2012) (internal quotation marks omitted).

We do not diminish Meza's tragic experience of being threatened at gunpoint while helplessly watching her son be beaten and abducted. However, the record does not compel a finding that such an experience constitutes persecution. Meza was never physically harmed during Alberto's abduction or at any time thereafter. She experienced only an unfulfilled threat of physical injury, and the record does not compel a finding that this threat was "so menacing" such that this case belongs to the "small category of cases" in which a threat alone constitutes persecution. See De Castro-Gutierrez, 713 F.3d at 380-81 (finding no past persecution where petitioner was robbed at gunpoint and received threats via phone and in person); Ladyha v. Holder, 588 F.3d 574, 577 (8th Cir. 2009) (finding threat at knifepoint insufficient to demonstrate past persecution); Setiadi, 437 F.3d at 713 ("[L]imited detentions do not usually rise to the level of past persecution."); see also Mejia-Ramos, 934 F.3d at 793 (finding no past persecution where petitioner's family disappeared, petitioner was cut off in a vehicle on the roadway, and petitioner received a phone call threatening "the same thing" would happen to her). Further, the kidnappers' threat that they would kill Meza if she went to the police is also insufficient to constitute persecution because it is non-specific and lacking in immediacy. See La, 701 F.3d at 571 (noting that "threats that are exaggerated, nonspecific, or lacking in immediacy" are insufficient to constitute persecution (internal quotation marks omitted)). Nor do the anonymous visits and phone calls to Meza's family members constitute persecution. In each instance, the anonymous individual neither threatened nor harmed the family member; he or she simply asked about Meza's whereabouts. See Al Yatim, 531 F.3d at 587 (noting that persecution does not include low-level intimidation or harassment).

Moreover, we reject Meza's argument that the harm suffered by Alberto constitutes direct persecution of her. We have explained that "[a]cts of violence

against family members may demonstrate persecution if they show a pattern of persecution tied to the petitioner." Ahmadshah v. Ashcroft, 396 F.3d 917, 920 (8th Cir. 2005).[3] "However, evidence of isolated violence is not sufficient. There must be evidence of a pattern of persecution on account of a protected ground, and the persecution must be tied to the petitioner." Jalloh v. Gonzales, 418 F.3d 920, 923 (8th Cir. 2005). Meza has failed to show a pattern of persecution that is tied to her. Although the record indicates that criminals took Alberto's house from him, extorted him at his motorcycle workshop, and eventually kidnapped and killed him, none of these incidents are tied to Meza. Meza was not present when Alberto's house was taken or when he was extorted. See Moses v. Gonzales, 178 F. App'x 586, 588 (8th Cir. 2006) (finding pattern of persecution was not tied to petitioner where petitioner was able to avoid harm because "he was either not present or he was able to run away"). While Meza happened to be present during Alberto's kidnapping, nothing in the record ties her to that alleged persecution. Meza was not harmed during the

---

[3]Citing Hounmenou v. Holder, 691 F.3d 967 (8th Cir. 2012) and Goswell-Renner v. Holder, 762 F.3d 696 (8th Cir. 2014), Meza asserts that this Court has not decided whether harm to an applicant's family member may constitute persecution of the applicant. However, Meza's reliance on Hounmenou and Goswell-Renner is misplaced. In both of those cases, the specific issue raised by the petitioners, and ultimately not decided by this Court, was whether the risk that the petitioner's daughter would be forced to undergo female genital mutilation if the petitioner were removed to his or her country of nationality constitutes direct persecution of the petitioner. See Goswell-Renner, 762 F.3d at 700; Hounmenou, 691 F.3d at 971. While we have not decided the exact issue raised in those cases, we have repeatedly addressed the precise issue raised by Meza in this case—that is, whether past harm to the petitioner's family member can constitute direct persecution of the petitioner. As discussed in more detail above, the established rule in this Court is that past acts of violence against a petitioner's family member may constitute direct persecution of the petitioner only if the petitioner has shown a pattern of persecution tied to the petitioner. Ahmadshah, 396 F.3d at 920. Accordingly, we reject Meza's argument that the BIA's failure to thoroughly address this issue was an error as a matter of law.

kidnapping, and the record suggests that the only reason the kidnapper threatened her was because she tried to intervene. Thus, Meza has failed to show a pattern of persecution that is tied to her.

In any case, Meza failed to present any evidence to suggest that this alleged persecution of Alberto was on account of his family relationship, "as opposed to the fact that, as [a business owner], [he was an] obvious target[] for extortionate demands." Cambara-Cambara v. Lynch, 837 F.3d 822, 826 (8th Cir. 2016). "On this record, substantial evidence supports a finding that the [Meza] family is no different from any other [Mexican] family that has experienced gang violence." Id. (internal quotation marks omitted). Accordingly, the harm suffered by Alberto does not constitute direct persecution of Meza. We find that substantial evidence supports the BIA's determination that Meza did not suffer past persecution.

"Even if an applicant has not shown past persecution, [s]he can still base a successful petition on a well founded fear of future persecution." Ladyha, 588 F.3d at 578. However, in arguing that she has shown a well-founded fear of future persecution, Meza relies on the same reasons she presented to show past persecution. Just as those reasons are insufficient to show past persecution, they are insufficient to show a well-founded fear of future persecution. Substantial evidence thus likewise supports the BIA's finding that Meza failed to show a well-founded fear of future persecution as required for asylum. Accordingly, Meza did not meet the more rigorous burden of showing a clear probability that her life or freedom would be threatened if removed to Mexico as required for withholding of removal. See Hounmenou, 691 F.3d at 970 ("[I]t is impossible for an alien who fails to meet the criteria for asylum to show eligibility for withholding of removal.").

Accordingly, substantial evidence supports the BIA's denials of Meza's requests for asylum and withholding of removal.[4]

B.

Finally, Meza argues that the BIA erred in denying her request for protection under the CAT. To be eligible for CAT relief, the petitioner must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture is defined narrowly as an extreme form of cruel and inhuman treatment intentionally inflicted by or with the acquiescence of a person acting in an official capacity." Sheikh v. Gonzales, 427 F.3d 1077, 1082 (8th Cir. 2005).

Meza argues that the BIA erred as a matter of law by failing to seriously analyze her request for relief under the CAT independently of her requests for asylum and withholding of removal. "A separate analysis, however, is required only when there is evidence the alien may be tortured for reasons unrelated to [her] claims for asylum and withholding of removal." Guled v. Mukasey, 515 F.3d 872, 882 (8th Cir. 2008). Meza "does not point to any evidence in the record, nor have we found any, which indicates [s]he may be tortured for reasons unrelated to [her] claims for asylum and withholding of removal." Id. Accordingly, a separate analysis was not

---

[4]Absent a showing of past persecution or a well-founded fear of future persecution, we need not decide whether Meza showed that any alleged persecution was on account of her status as a member of Alberto's immediate family, whether the Mexican government is unwilling or unable to protect her from the alleged persecutors, or whether Meza can avoid future persecution by relocating in Mexico. See Mejia-Ramos, 934 F.3d at 793 (affirming denial of asylum based solely on petitioner's failure to show past persecution or well-founded fear of future persecution).

-10-

necessary, and substantial evidence in the record likewise supports the BIA's denial of Meza's request for relief under the CAT.

## III.

For the foregoing reasons, we deny the petition for review.

_____