# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1651

_____

Leoncio Diaz-Perez

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: December 19, 2013
Filed: May 2, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

RILEY, Chief Judge.

Leoncio Diaz-Perez petitions for review of a final order of removal entered by the Board of Immigration Appeals (BIA). Having appellate jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## I.    BACKGROUND

Diaz-Perez, a native and citizen of Mexico, last entered the United States at or near Brownsville, Texas, on May 1, 2004.  On December 28, 2008, according to Border Patrol Agent Benjamin C. Lotvedt, Diaz-Perez was involved in a car accident west of Mandan, North Dakota.  Agent Lotvedt reported that when Diaz-Perez could only produce a Mexican identification card, the responding officer contacted the U.S. Department of Homeland Security (DHS) to assist in identifying Diaz-Perez.  Diaz-Perez admitted he entered the U.S. illegally, and DHS took him into custody for processing.  On December 29, 2008, Agent Lotvedt interviewed Diaz-Perez about his entry into the U.S., documenting the interview on a Record of Deportable/Inadmissible Alien (I-213).  Agent Lotvedt recorded that Diaz-Perez reported he "entered afoot near Brownsville, Texas," before traveling successively to Alabama, Nebraska, and North Dakota to work construction.

DHS initiated removal proceedings, charging Diaz-Perez was removable for being (1) "an alien present in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i), and (2) an immigrant "not in possession of a valid, unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document," id. § 1182(a)(7)(A)(i).  Diaz-Perez contested the first charge, arguing he was inspected and admitted to the U.S. and thus eligible for adjustment of status based on his marriage to a U.S. citizen.

In proceedings before an immigration judge (IJ), Diaz-Perez admitted all of the facts recorded in the I-213 save one—Diaz-Perez denied telling Agent Lotvedt that he entered at Brownsville afoot.  Contradicting the I-213 narrative, Diaz-Perez testified he told Agent Lotvedt that he entered the U.S. by car.  Diaz-Perez maintained he had presented himself for inspection and admission when he entered the U.S. in 2004 as a passenger in the back seat of a red Ford Mustang driven by his mother-in-law, Virginia Williams, and with family friend Alicia West riding as a passenger in the front seat.  Diaz-Perez testified an immigration officer at the border checkpoint

asked *only* Williams if she was a U.S. citizen, which she confirmed. By Diaz-Perez's account, the agent did not ask Diaz-Perez or West any questions and did not ask for any documentation before waving the trio through. Admitting he did not have a visa or border-crossing card when he entered the U.S., Diaz-Perez testified Williams and West were aware he was entering the U.S. illegally before they crossed the border, but wanted Diaz-Perez to be with his children.

Williams testified for Diaz-Perez, but recalled some of the key details of the alleged border crossing differently. Williams testified West—not Williams—drove the Mustang across the U.S. border to pick up Diaz-Perez and then drove back to the U.S. border. Williams further testified the immigration officer asked *both* West and Williams if they were U.S. citizens, to which each answered yes. Williams also testified she did not know Diaz-Perez "was not legal" until several years after they crossed the border.

The IJ considered those "discrepancies and contradictions in the evidence" to be significant. The IJ found Williams's "testimony not credible" based, in part, on a discrepancy between the time Williams testified it took to travel to Mexico from Alabama and the time she testified it took to return to Alabama. The IJ found "implausible" Williams's claim that she and West slept in the Mustang in fast-food restaurant parking lots for six or more hours per night on the way to and from Mexico, despite Williams being on disability, suffering from diabetes, and taking medication along the way.

The IJ also found incredible Diaz-Perez's testimony that he told Agent Lotvedt that he entered the U.S. in 2004 by car, rather than afoot. The IJ found it "difficult to conceive any circumstances where all of the information contained in an I-213 is correct but for the one piece of information crucial to [Diaz-Perez]'s eligibility for relief in the United States." On the contrary, the IJ found "the I-213 to be accurate and credible and totally contradictory to [Diaz-Perez]'s testimony." The IJ concluded

Diaz-Perez failed to prove by clear and convincing evidence that he was "lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2)(B); see also id. § 1361 (requiring a person subject to removal proceedings "to show the time, place, and manner of his entry into the United States"). On September 1, 2011, the IJ sustained both charges of removability and granted voluntary departure.

Diaz-Perez appealed to the BIA, arguing he and Williams provided credible testimony establishing he entered the U.S. by car and was inspected and admitted at Brownsville in May 2004. The BIA dismissed the appeal, concluding the IJ did not clearly err in finding Diaz-Perez and Williams were not credible. Recounting the evidence the IJ emphasized and noting the reliability of the I-213, the BIA agreed with the IJ that Diaz-Perez's testimony "that he entered the United States by car through the port of entry, and that he was waved through while a passenger in a car with Virginia Williams and Alicia West" was "not credible, and that the I-213 [was] accurate and credible, and in direct conflict with [Diaz-Perez]'s testimony as to his manner of entry into the United States."

The BIA concluded, "Based on the discrepancies reflected in the testimony of [Diaz-Perez], the testimony of his witness, and the evidence of record, the arguments on appeal do not persuade us that the [IJ]'s adverse credibility finding was clearly erroneous." Because "the evidence of record support[ed] the finding that [Diaz-Perez] [wa]s not eligible for adjustment of status based on the manner of his entry into the United States," the BIA dismissed the appeal and ordered voluntary departure. Diaz-Perez petitions for review.

## II. DISCUSSION

Diaz-Perez challenges the IJ and BIA's adverse credibility findings, reliance upon a "flawed and unreliable" I-213, and determination that Diaz-Perez was removable for being present in the U.S. without having been admitted or paroled and

thus ineligible for adjustment of status under 8 U.S.C. § 1255. "We review the BIA's decision as the final agency action." Malonga v. Holder, 621 F.3d 757, 764 (8th Cir. 2010). "[T]o the extent that the BIA adopted the findings or the reasoning of the IJ, we review the IJ's decision as well," Karim v. Holder, 596 F.3d 893, 897 (8th Cir. 2010), affording "much weight" to the IJ's credibility findings when "the IJ [has] see[n] the witness testify and is therefore in the best position to determine . . . credibility," Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006). See 8 U.S.C. § 1229a(c)(4)(C) (elucidating the criteria for evaluating credibility during removal proceedings).

"We review the IJ's findings of fact, including adverse credibility findings, under the deferential substantial evidence standard, and must treat those findings as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Sandoval-Loffredo v. Gonzales, 414 F.3d 892, 895 (8th Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)). In other words, "the IJ's findings must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but compels it." Sultani v. Gonzales, 455 F.3d 878, 881 (8th Cir. 2006).

Applying these standards, we conclude substantial evidence supports the IJ's determinations, affirmed by the BIA, that (1) Diaz-Perez and Williams did not provide credible testimony Diaz-Perez entered the U.S. by car in 2004, and (2) Diaz-Perez was removable because he failed to prove he had been inspected and admitted as he claimed.[1] The I-213, which Diaz-Perez conceded was an accurate report of the

---

[1]Relying on In re Areguillin, 17 I. & N. Dec. 308 (B.I.A. 1980), Diaz-Perez argues a "foreign national [who has] entered the United States as a 'wave through[]' . . . is considered 'inspected and admitted' for purposes of INA § 245(a) and may adjust his status to that of lawful permanent resident even though he does not currently have any valid status" and "volunteers no information and is asked no questions by the immigration authorities." We need not reach this issue to resolve

information he provided to Agent Lotvedt in all other respects, provided strong evidence Diaz-Perez entered the U.S. afoot without inspection or admission, rather than in a car as Diaz-Perez and Williams testified. See Nadeem v. Holder, 599 F.3d 869, 873 (8th Cir. 2010) (explaining "contradictions between official records and the evidence submitted" support adverse credibility findings).

The IJ and BIA also articulated specific reasons to discredit Diaz-Perez's and Williams's testimonies based on "discrepancies and contradictions" in their accounts of the pivotal issue of the border crossing, including who was driving, what questions were asked, and whether Williams knew of Diaz-Perez's immigration status at the time he entered the U.S. See Singh v. Gonzales, 495 F.3d 553, 557 (8th Cir. 2007) (deciding an immigration judge must give reasons "'specific' enough" to enable "a reviewing court [to] appreciate the reasoning behind the decision and perform the requisite judicial review"). A reasonable adjudicator could find the discrepancies and contradictions here significant and Diaz-Perez's evidence incredible and implausible, as did both the IJ and the BIA. See id. at 558. The record evidence in this case did not "compel" the contrary conclusion Diaz-Perez proposed—that he entered the U.S. by car, rather than "afoot." See Sultani, 455 F.3d at 881.

## III.  CONCLUSION
We deny the petition for review.

_____

_____

Diaz-Perez's petition for review in light of the IJ's conclusive factual findings.