United States Court of Appeals
For the Eighth Circuit
_____

No. 13-3495
_____

Bin Jing Chen

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: November 12, 2014
Filed: January 15, 2015
_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.
_____

MURPHY, Circuit Judge.

Petitioner Bin Jing Chen, a native and citizen of China, applied for asylum in this country, withholding of removal, protection under the Convention Against Torture (CAT), and cancellation of removal. The Immigration Judge (IJ) denied the requested relief, and the Board of Immigration Appeals dismissed Chen's appeal. She now petitions for review of the Board's decision. We deny her petition.

I.

Chen entered the United States without inspection. She applied in January 2008 for a "U" visa, which gives temporary legal status to crime victims. That application was denied in August 2009. While the U visa application was pending, Chen filed an affirmative application for asylum on April 2, 2009 based on her fear that she would be persecuted if she returned to China because she is a Christian. The asylum officer referred her application to the immigration court after determining that Chen had filed her application more than one year after entering the United States and that she had not shown any exception to the one year deadline for filing. Chen was served with a notice to appear. She conceded removability and sought relief in the form of asylum, withholding of removal, CAT protection, and cancellation of removal.

At a hearing before the IJ, Chen testified that she had entered the United States through the Canadian border without inspection on December 10, 1997. She had decided to leave China for the United States because her mother had been arrested twice for her involvement in a Christian church. That church had met openly until government officials arrived during a service and arrested the pastors and the church elders. Chen's mother had also been arrested because she had helped to spread the church's message. She was imprisoned for a month and told "to stop practicing her religion because it was an evil cult." Chen initially testified that her mother's first arrest occurred in 1990, but later stated it was 1997. Chen was unable to name or describe the branch of Christianity to which her mother belonged.

After her first arrest, Chen's mother worshiped in a "family church" which was a small group that met at various homes. Chen helped the family church by typing information for her mother and arranging their home to host services. In December 1997, Chen was helping her mother prepare the home for a service when someone warned them that the police were coming. Chen's mother told her to run so she went

to a relative's house. The police arrested the mother, interrogated her for one hour, and then released her. Chen wanted to leave China because she was afraid she would also be arrested. Church members contacted a "snakehead" (smuggler) to help Chen escape to the United States.

Chen's testimony about when and how she came to the United States conflicted with statements in her applications for immigration relief. At the hearing, Chen testified that she flew from Shanghai to Canada using a British passport, stopped briefly at the snakehead's home to eat a bowl of noodles, and then went to New York, arriving on December 10, 1997. Chen's U visa application stated, however, that she entered the United States on December 15, 1998, and her cancellation of removal application gave November 19, 1997 as the date she arrived. In her U visa application, Chen also claimed that she had been held for two weeks in the snakehead's basement while he threatened to put her in a brothel if her family did not pay more money. She denied this account at the hearing, where she explained that her husband had filled out the U visa application and she had just signed it. Chen's testimony and applications variously represented that she traveled from Canada to New York by bus, van, small car, and boat.

Chen testified that she became a Christian when she was baptized in China on December 25, 1996, and she provided a baptism certificate. In the United States she attended an English speaking church on Long Island once or twice shortly after her arrival, but she did not go to church again until 2009. She explained that she was unaware of any Mandarin speaking churches until that year when a woman named Qian introduced her to the Minnesota Mandarin Christian Church, and Chen began attending services there. Chen later began going to services at Twin City Chinese Church on August 19, 2010 and testified that she continued to attend that church. Affidavits from fellow church attendees corroborated this testimony.

At the hearing Chen argued that her asylum application was timely due to changed circumstances. She explained that she had mailed "small booklets" about Christianity to her mother in China in November 2008. Chen stated that she received these booklets "from the church" or from the woman who had introduced her to the church in 2009. She also gave some booklets to a friend who was traveling to China and asked her to take the booklets to Chen's mother. Chen claimed that Chinese officials confiscated most of the materials she had mailed and went to her family's home to investigate. There, they told her mother to warn Chen "to stop being involved with a cult." A letter from Chen's mother said that the officials visited her home in February 2009. Chen did not explain how she had obtained the booklets "from the church" in 2008 when she did not know about or attend Minnesota Mandarin Christian Church until 2009. There was no mention in her asylum application of sending Christian materials to China or a subsequent visit to her mother's home by Chinese officials.

Chen's claims for relief in the form of asylum, withholding of removal, and CAT protection were based on her asserted fear that she would face persecution on account of her Christian beliefs if she returned to China. Country conditions evidence indicated that while some Chinese Christians who participate in unsanctioned churches have been arrested, imprisoned, and severely abused, government repression of unsanctioned religious activity is minimal in parts of China, and churches that meet in homes may be "quietly tolerated by local authorities." U.S. Dept. of State, China: Profile of Asylum Claims and Country Conditions (2007). Chen testified that her mother had not been arrested or harmed by the police since 1997.

Chen also sought cancellation of removal, arguing that her removal would cause "exceptional and extremely unusual hardship" to her two United States citizen children because they would go with her. The children have visited China twice. Each first visited China at the age of three months, traveling with a family friend.

They stayed with a neighbor near their grandparents until age three or four. The children also visited China for two months in the summer of 2009. If they were to reside in China as United States citizens, they could not attend a public school and Chen would have to pay for a private school. Both of her children need glasses, and one has amblyopia (lazy eye) and strabismus (crossed or misaligned eyes). The children's citizenship would disqualify them for public medical insurance, and Chen would have to pay for private insurance. Chen's application for cancellation of removal stated that she and her husband, a Chinese citizen without legal status in the United States, have $375,000 in assets, mostly in real estate.

The IJ found that the evidence Chen presented in support of her asylum, withholding of removal, and cancellation of removal applications was not credible, noting several inconsistencies and observing that Chen's account "ha[d] evolved over time." The judge also determined that Chen had failed to prove her children would suffer exceptional hardship if she were removed, thus disqualifying her for cancellation of removal. The IJ denied the requested relief.

Chen appealed to the Board of Immigration Appeals. The Board concluded that the IJ's adverse credibility determination was not clearly erroneous in respect to Chen's claim of changed circumstances. The record thus supported the IJ's decision to deny the asylum application as time barred. Assuming that Chen's testimony was otherwise credible, the Board determined she had not met her burden of proof for the withholding of removal, CAT relief, and cancellation of removal claims. The Board then dismissed her appeal. Chen petitions our court for review of the denial of each form of her requested relief.

II.

An alien who files an application for asylum must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date

of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). If the application is not filed within this one year deadline, it may still be considered "if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D). Chen conceded that she had not filed her application within one year of her arrival but argued that the Chinese government's response to the Christian booklets she sent to China was a qualifying changed circumstance. The IJ and the Board found this account not credible and concluded that Chen had not sufficiently demonstrated changed circumstances to excuse the untimeliness of her application.

We lack jurisdiction to review a determination that an application for asylum is untimely, except when the petition seeks "review of constitutional claims or questions of law." Purwantono v. Gonzales, 498 F.3d 822, 824 (8th Cir. 2007), citing 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). To determine whether a petitioner "is raising a constitutional claim or question of law, over which we have jurisdiction, or asserting a dispute with the [IJ's and] BIA's factual findings or discretionary judgments, which are insulated from judicial review," we examine the nature of the argument in the petition. Id. Here, Chen argues that the adverse credibility finding was erroneous because it was "not based on a fair gleaning of the record" and because inconsistencies in her testimony were simply "innocent mistakes." These claims "amount to a quarrel with the [IJ's and] BIA's discretionary factual determination," and we lack jurisdiction to review whether Chen demonstrated changed circumstances that would provide an exception to the one year filing deadline. See id.

Chen petitions for review of the Board's denial of withholding of removal and relief under CAT. We review the Board's decision "as the final agency action." Diaz-Perez v. Holder, 750 F.3d 961, 963 (8th Cir. 2014). Applying the substantial evidence standard, we reverse only if the evidence was "so compelling that no

reasonable factfinder could fail to find in favor of the petitioner." Quiñonez-Perez v. Holder, 635 F.3d 342, 344 (8th Cir. 2011).

The Board determined that even if Chen's testimony were credible, she had failed to meet her burden of proof to qualify for withholding of removal or CAT protection. To qualify for withholding of removal an alien must show that her "life or freedom would be threatened" in the country of removal on account of a protected ground, such as religion. 8 U.S.C. § 1231(b)(3)(A). For relief under CAT an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Here, country conditions evidence showed that unsanctioned Christian groups are tolerated in some parts of China. Chen testified that her mother, who continues to practice Christianity, has not been arrested or harmed by the government since Chen left China in 1997, over 15 year ago. Chen's children also safely visited China for extended periods of time, most recently in 2009 after Chen had applied for immigration relief. Under these circumstances, the Board's determination that Chen failed to prove she qualified for withholding of removal or CAT relief was supported by substantial evidence.

Chen also petitions for review of the denial of cancellation of removal. Cancellation of removal may be granted to an alien who (1) has been continuously physically present in the United States for ten years; (2) has been a person of good moral character; (3) has not been convicted of certain crimes; and (4) has a qualifying United States citizen relative who would suffer "exceptional and extremely unusual hardship" if the alien were removed. 8 U.S.C. § 1229b(b). Chen claimed that her two United States citizen children would suffer such hardship if she were removed to China. She argues that the Board committed "legal error" because it did not "truly take into account" what would happen to the children if their father were also removed from the United States and they had to go to China.

We may review "constitutional claims or questions of law" in cancellation of removal cases, but we lack jurisdiction to review the discretionary determination that a "petitioner's removal would not result in exceptional and extremely unusual hardship." Hernandez-Garcia v. Holder, 765 F.3d 815, 816 (8th Cir. 2014) (quotation omitted), citing 8 U.S.C. § 1252(a)(2)(B)(i), (D). A petitioner may not "create jurisdiction by cloaking an abuse of discretion argument in constitutional or legal garb." Id., quoting Garcia-Torres v. Holder, 660 F.3d 333, 338 (8th Cir. 2011). Chen's argument that the Board insufficiently weighed the impact of her husband's possible removal challenges the Board's discretionary determination, not its application of the law. We therefore lack jurisdiction to review the denial of cancellation of removal in this case.

Accordingly, we deny the petition for review.

_____